## Lewis F. Chamberlain

*v.*

## John M. Chamberlain.

*Filed at Ottawa March 27, 1886.*

1. Evidence—*as to indorsements upon a promissory note, favorable and unfavorable to the party producing them.* Where a plaintiff introduces a promissory note of the defendant in evidence, all indorsements of payments thereon are *prima facie* evidence against the plaintiff that such payments have been made, but they are liable to be explained or rebutted.

2. But where the maker of a note seeking to avoid its payment, produces and offers the same in evidence, a memorandum indorsed thereon, not of payments by him, is not evidence in his favor, unless it is shown to have been made while the note was in the possession of the payee or other legal holder, or made by some one having authority to make it.

3. In a suit upon a lost note, the plaintiff testified that he first missed the note from his trunk while on a visit to the makers, and that he could not find the same. On the trial the defendant produced a note purporting to have been given by him to the plaintiff, but differing in date and amount from that claimed by the plaintiff, having this indorsement thereon, claimed to be in the handwriting of the father of the maker and payee: "F., (the defendant) I have paid this note in full to John, (the plaintiff) and send it to you," and signed by the father, which was with such indorsement offered in evidence by the defendant. The court admitted the note, but refused to let the indorsement go to the jury: *Held,* that the indorsement was properly · rejected.

4. After the loss of a promissory note, and suit thereon, the maker produced what he claimed to be the original note, and testified that he received the same from the father of both maker and payee, in a letter, the father being dead, and offered in evidence on the trial an indorsement on the same, which the evidence tended strongly to show was in the handwriting of the father, to the effect that the latter had paid the note, without stating when or how, together with the father's letter of the same import,—which, on objection, was excluded: *Held,* that the proposed evidence was not admissible as a part of the *res gestœ*, or on any other legal grounds, and that such entries and writing were but hearsay.

5. Action upon a lost note—*of the pleadings and the evidence—as to the identity of the note.* Where the pleadings are so framed as to allow it, the plaintiff may recover upon a lost note, notwithstanding he may be mistaken as to the date of the same and the exact amount thereof, where the evidence shows otherwise that he has the right to recover.

6. In an action upon a lost note given in renewal of a prior note, one count of the declaration described the note as being dated April 20, 1874, and for $954.47, as the same was claimed by the plaintiff, and another described it as of the date of February 12, 1874, and for $944.06, being in accordance with the claim of the defendant, who also claimed its payment. There was no claim that there were two notes. The court instructed the jury that they might find for the plaintiff under either count, if the evidence warranted such finding: *Held*, there was no error in giving such instruction.

7. PRACTICE—*admitting evidence in chief after closing.* After a defendant has closed his evidence in chief as to the facts in the case, and the plaintiff has closed his testimony in rebuttal, it is a matter of discretion in the trial court whether the defendant shall be allowed to give further evidence in chief upon the same question.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Mercer county; the Hon. JOHN J. GLENN, Judge, presiding. .

On the 10th of March, 1868, appellee loaned appellant $600, and took his note for $601.50, the $1.50 being the amount of revenue stamp then required by law. This note was subsequently taken up and a new one given. Appellant claims that the new note was dated February 12, 1874, and was for the sum of $944.06, while the appellee claims it was dated April 20, 1874, and was for the sum of $954.47. The declaration, as amended, contained a count upon each of the two supposed notes. The one dated April 20, 1874, was claimed to have been lost by appellee before the bringing of the suit. Appellant filed a plea denying the execution of the note for $954.47, dated April 20, 1874, verified by his affidavit, and a plea of payment of the note of $944.06, dated February 12, 1874. At the trial, proof of the making of the note of April 20 and of its loss was made. Appellant claimed, and his testimony tended to show, that he never had but the two notes of his brother, (appellant,) the one for $601.50, first given, and the renewal note of $954.47, and that appellee went to the house of appellant, in February, 1882, and had in his trunk the note for $954.47, and that it got out of his trunk some way, and was lost while he was at appellant's

31—116 ILL.

house, at that time, and it was wholly unpaid, except $100 paid in 1875, and $100 paid in 1877. The appellant produced on the trial the note for $944.06, which he testified was the one given in renewal of the first note given by him to appellee, and further testified that he received a letter from Lewis Chamberlain, who was the father of appellant and appellee, inclosing to him this note now produced. On the back of this note was indorsed these words: "Freeman, I have paid this note in full to John, and send it to you." On objection by appellee, this indorsement was excluded from the jury. Appellant also offered the letter of Lewis Chamberlain, which contained the note when sent to him. The court admitted the words:

"HEBRON, *February 4, 1884.*

"*Freeman*—Now, Freeman, inclosed you find the John note. I send it to you.                LEWIS CHAMBERLAIN."

—But excluded the words in that letter, "I have paid it off." Appellant admitted the giving of the first note, and a renewal thereof, but claimed that the renewal note was the one produced by him. Appellant does not claim that he ever paid appellee anything on the note, except $100 in 1875, and $100 in 1877, both of which are admitted and credited on the note produced by appellant, but insists that their father paid appellee and took up the note for $944.06, and sent it to him by mail. The verdict was for appellee, in the sum of $1587.70. Motion for new trial was overruled, and judgment on the verdict. Appellant appealed to the Appellate Court, where the judgment of the circuit court was affirmed. He now brings the case to this court by appeal.

Mr. B. C. TALIAFERRO, and Messrs. McCONNELL & MORGAN, for the appellant:

The memorandum indorsed on the note was also a credit or memorandum of payment in full, and should have gone in evidence with the note. *Long* v. *Kingdon,* 25 Ill. 66.

Appellant was entitled to introduce this memorandum, and the whole of the letter of February 4, 1878, in evidence, so that the witnesses and the jury might compare the handwriting of the two. *Brobster* v. *Chill*, 64 Ill. 356; *Rogers* v. *Shaler*, Anth. N. P. 149; *Merchant* v. *Will*, 1 Tuck. 151; *Dubois* v. *Baker*, 30 N. Y. 355; 40 Barb. 556.

The indorsement on the note was admissible as part of the *res gestæ*, as the declaration of one in possession, after his death. *Putnam* v. *Osgood*, 52 N. H. 148; *Quinn* v. *Eggleston*, 108 Ill. 248; 1 Greenleaf on Evidence, sec. 128.

As showing this entry was admissible in evidence, see 1 Wharton on Evidence, secs. 226, 249; 2 Best on Evidence, sec. 507; Greenleaf on Evidence, secs. 147, 108; 2 Col. 442; 4 Scam. 556; 19 Ill. 34; 45 id. 431; Abbott's Trial Evidence, 807, note 14; *Whitlock* v. *Hay*, 58 N. Y. 481; *Foster* v. *New Borough*, 66 Barb. 645.

If a receipt is delivered by letter, the letter is evidence as a part of the *res gestæ*. Abbott's Trial Evidence, 404, note 5; *Durling* v. *Miller*, 24 Barb. 149.

Mr. JOHN C. PEPPER, for the appellee:

The entry on the back of the note was not evidence in this case. Anything the dead man said or wrote about said note while he had possession of it, would be legitimate evidence in any case where his interests were involved. While possession is *prima facie* evidence of ownership, we do not know that the dead father ever possessed it, except by his statement, and his declaration was not adverse to his interest. The law of this case is laid down in *Kent* v. *Mason*, 79 Ill. 540. See, also, *Prior* v. *White*, 12 Ill. 261; *Fisher* v. *Meek*, 38 id. 92; *Winslow* v. *Newlan*, 45 id. 145; *United States* v. *Hutchins*, 67 id. 348; *Railroad Co.* v. *Bell*, 70 id. 102; *Robertson* v. *Brost*, 83 id. 116; *Callaghan* v. *Myers*, 89 id. 566; *Bennett* v. *Stout*, 98 id. 47; *Cummins* v. *Leighton*, 9 Bradw. 186.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

The arguments filed in this cause on either side are devoted mainly to a discussion of the facts. The determination of the Appellate Court is conclusive of all questions of fact, and we are permitted to examine into the evidence only to ascertain whether the law was properly applied by the trial court, and whether there has been error in the admission or exclusion of testimony.

It is insisted that the circuit court erred in excluding from the jury the memorandum on the back of the note produced by appellant, and claimed to be in the handwriting of Lewis Chamberlain, and the portions of the letter of Lewis Chamberlain in which it is claimed the note was sent to appellant. Two reasons are assigned why the exclusion thereof was erroneous. It is said by counsel that the note having been produced by appellant, and admitted in evidence, the indorsements on the back of it were also admissible, and the case of *Long et al.* v. *Kingdon,* 25 Ill. 66, is cited in support. In general it is true that where the note comes from the possession of the party seeking to enforce payment, all indorsements of payments thereon are *prima facie* evidence that such payments have been made, but such indorsements may even then be explained. This is as far as the authority cited goes. When, however, as in this case, the note comes from 'appellant, who is the maker, and who is seeking to avoid its payment, if he wishes to introduce memoranda indorsed on the note, and which is not the mere indorsement of payments, he must first show that it was made while in the possession of the payee or other legal holder of the note, or made by some one having authority to make it.

It is said this indorsement of the words, "Freeman, I have paid this note in full to John, and send it to you—Lewis Chamberlain," was made by Lewis Chamberlain while the note was in his possession; but there is no competent testi-

mony offered to prove this fact, nor do we find any evidence in the record tending to show that such memoranda on the note was in Lewis Chamberlain's handwriting, or that any such evidence was offered by appellant. The evidence tends to show that the letter referred to is in the handwriting of the father, Lewis Chamberlain. But suppose it be admitted that the memorandum was written by Lewis, is the memorandum and letter, or either, competent evidence to prove the fact therein stated? The court admitted so much of the letter as related to or was connected with the act of sending the note, as part of the *res gestæ* of that act, but excluded all that portion which attempted to state what had been done at some previous date. It is testified to, and not contradicted, that appellee lost the note of appellant some time before the trial, and if the note produced by appellant is the genuine note, it turns up for the first time, after its alleged loss, in the hands of appellant, so far as known or testified to by any person.

There is no pretence that appellant ever paid the note, or any part of it, except $100 in 1875, and $100 in 1877, both of which are admitted by appellee. The only evidence that the note was ever in Lewis Chamberlain's possession, is the testimony of appellant that he received it in the letter offered in evidence purporting to be from his father, and which there is evidence strongly tending to show was in the father's handwriting. All the rest depends upon the statement written on the back of the note and contained in the letter. It is contended that this evidence is admissible upon two grounds: First, because Lewis Chamberlain was in possession of the note when they were written; he was dead at the time of the trial, and the memorandum and letter were made and written in the usual course of business, and are against his interests; and secondly, that such writings are admissible as part of the *res gestæ*. To be competent as *res gestæ*, they must have been cotemporaneous with and explanatory of the transaction

of paying off and taking up the note,—part of that transaction. This they do not purport to have been. When the note was paid, if ever, does not appear, and they do not of themselves state, but on their face each is but a narration of an event that had previously taken place,—of something the writer had done at some time in the past. These writings are not admissible upon that ground, nor can they be admitted upon any ground. As to these parties, they fall within none of the rules admitting the declarations of third parties. Here there is, as said, nothing purporting to show when the note was paid, if ever, nor that this entry on the back of the note was done in the regular course of business, and it can not be said to be against the interest of Lewis Chamberlain whether he intended a gratuity to appellant or not. (1 Greenleaf on Evidence, sec. 120.) We have seen that this is not an indorsement on the note by a holder, of a payment made on the note by any one liable thereon as maker, indorser, or otherwise, but an entry thereon by a stranger to it, who may have been in possession, of his act in relation thereto, and we are of opinion that it is hearsay only, and not admissible for any purpose in a suit between the payee and maker.

The objection taken to the third and fourth instructions given at the instance of appellee is, that by these instructions the jury are told, in effect, they might find for plaintiff upon either of the special counts of the declaration if the evidence warranted such finding, when the evidence showed conclusively that there was but one note, while the counts mentioned counted upon distinctly different notes. To this it may be replied, that whilst the evidence on both sides showed clearly that one note only was given by appellant to appellee, it was left in doubt as to whether the note described in the first or second count was the real note. Appellee testified that the note was for $954.47, dated April 20, 1874, and payable on demand. Appellant produced a note for $944.06, dated February 4, 1874, which he testified was the note given by him

to his brother, appellee. All agree that but one note was given, and unless paid by Lewis Chamberlain, that it remained unpaid. The claim was for the same identical indebtedness, whether represented by one note or the other. The jury might very well say that appellee, testifying from memory, was less liable to be accurate as to the precise date and amount of the note, than appellant, who seemed to be corroborated by the production of a note of about the same date and amount. Suppose the jury, from all the evidence, had been satisfied that appellee was mistaken as to the exact date and amount of the note he claimed to have lost, and that appellant was correct, and the note produced by appellant was in fact *the note*, and further believed, from the evidence, that the indebtedness, no matter by which note represented, had not been paid, would plaintiff be precluded from recovery thereon because they believed he was mistaken, or because he was in fact mistaken as to the date or amount of the note?

The third instruction simply told the jury under these circumstances plaintiff could recover. The fourth instruction related to the count where the note was described as appellee testified it was, and said to the jury the plaintiff might recover on that count if they believed, from the evidence, that the note then counted on had been made and delivered, and remained unpaid. It is evident, or at least will be made so, by calculating interest on the original note from February 12 to April 20, that the amounts of these notes described are substantially the same, and further, that the verdict on either would be for practically the same amount, so that if the jury found the indebtedness unpaid, it was practically of little importance which theory they adopted. There is no complaint that the verdict is excessive, if calculated on either of the notes described.

We see no objection to the seventh instruction complained of by appellant. It is not error for the court, at the request of the party, to state to the jury the theory upon which a case

is being tried, and then announce the law applicable to such theory; and it is the province of the jury to decide whether one theory or another is sustained by the evidence, under the law announced by the court. This instruction did no more than this.

These are the only instructions to which special objections are pointed out by counsel, and we are unable to see any error in others given, or in refusal of those refused by the court.

Upon the trial, appellant, after offering the letter of Lewis Chamberlain in evidence, produced the testimony of a number of witnesses, who testified that said letter was in the handwriting of said Lewis Chamberlain. After he had closed his case in chief, and the plaintiff had concluded in rebuttal, appellant called one Edwards, and proposed to prove by him the handwriting of said letter was that of Lewis Chamberlain. Objection was made, and sustained, and appellant excepted. The evidence offered was proper in· chief. It was a matter of discretion whether it should be admitted, or not, when offered, and we can not say that the discretion was not properly exercised.

Finding no error for which the judgment should be reversed, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*