OVERTON, J.
Plaintiff, alleging that Eugene Walker induced her to sign, by false representations and fraud, a document conveying to him one-half of her interest in a mineral lease on land situated in the parish of Caddo, instituted this suit to annul the conveyance of that interest. She alleges that she is an ignorant colored woman, of weak mind, and did not know what she was signing when she executed the sale; that the sum of $1,000 which the act of conveyance recites was paid her as the consideration for ‘the transfer was never in fact paid; that some 3,000 barrels of oil, a part of which was due her as royalty, by the assignee of the lease, had not been disposed of, for the reason that the pipe line companies would not remove the oil; that defendant “told her that her oil was tied up, and that she would never get anything out of it unless she signed this act”; that she signed it under the belief induced by the representations of said Walker (the defendant herein) that she was signing an act so as to have said oil released, and the proceeds paid to her. She further alleges that in any event the sale of the half interest in the lease to Walker is null and void for lesion beyond moiety, as the property transferred is worth more than twice the consideration claimed to have been paid her for it, even had it been paid. She therefore prays for the annulment of the act.
The defendant Walker excepted to plaintiff’s demand on the ground that it discloses no cause of action. The exception was overruled by the lower court, and defendant then answered, denying the allegations of fraud and misrepresentation, and denying the alleged ignorance and intellectual weakness of plaintiff, and averring the validity of the act of transfer. The lower court, after hearing the evidence, rendered judgment for plaintiff annulling the sale, and defendant has appealed. Pending the appeal, plaintiff died, and her heirs have been made parties plaintiff by motion in this court.
 Defendant argues, under his exception of no cause- of action, that, in so far as plaintiff’s suit is based on fraud, the only fraud alleged consists of representations made by him that he would procure the removal of plaintiff’s oil for her. Such misrepresentations, defendant contends, are those of intentions to be executed in the future, and do not constitute the basis for annulling a contract for fraud, since, to con *883 stitute such a basis, the false representations must be of facts, which previously existed, or of existing facts, and not of intentions for the future. However, be.that as it may, it would be needless to inquire whether false representations as to such intentions in the future would constitute a sufficient basis to annul’ a contract for fraud, since in respect to this question we do not give to plaintiff’s petition the same interpretation that defendant does. It appears to us that when Walker told plaintiff, an ignorant negress of weak intellect, “that her oil was tied up and that she would never get anything out of it unless she signed the act,” and when it appears that she signed it under the belief induced by Walker’s representations that she was signing it so' as to have her part of the oil released that had been withdrawn from.the ground, and the proceeds paid to her, she was led to believe by his false representations, that she was signing an act entirely different from what it really was. Such allegations relate to existing facts, and, if true, are sufficient to annul the contract. For the purposes of the exception of no cause of action the allegations must be accepted as true. The exception should therefore be overruled. In overruling it, we may 'say that the conclusion we have reached on the merits, in so far as relates to the attack on the sale for fraud, makes it unnecessary to consider the demand for the annulment of the sale for lesion beyond moiety, and therefore, such being the case, it is unnecessary to decide the exception of no cause of action, in so far as it is directed against that demand.
As already stated, in effect, we are of the opinion that the sale should be annulled for fraud. The evidence establishes that, wnile plaintiff was not insane, yet that she was old, ignorant, and weak-minded. After her husband’s death, D. P. Hollis, at one time a merchant of the locality in which plaintiff lived, attended to her business for her, under a power of attorney. He did so because he felt-that plaintiff was incapable of attending to it, and that, unless some one did, she would lose all that she had.
Plaintiff owned an undivided half interest in 80 acres of land in Caddo parish. In 1918 she and her co-owners granted a mineral lease to the Atlas Oil Company on this land in consideration of $4,500 cash, and in further consideration of one-eighth of all oil produced and saved from wells producing 200 barrels or less per day, and one-sixth from each well in excess of that amount, and in further consideration of $200 per annum for all gas from oil wells used or sold off the premises, and $10 a year additional when the gas is so used or sold for the manufacture of gasoline. Two wells, which proved successful, were drilled on the lease. It does not appear that plaintiff had received any royalty from the lease up to the time of the transfer of her interest to Walker, nor does it appear that the wells had been operated to their full capacity up to that time. Her failure to receive royalty and the failure to operate the wells to their full capacity was due to the fact that the pipe line companies were not moving oil, at least in large quantities, at the time of the transfer to Walker. It is difficult from the evidence to estimate the value of plaintiff’s rights in the lease, but we think that the evidence fairly justifies the conclusion that the one-half of her interest which she sold Walker was worth at the time on the market over $20,000. We mention this, and the condition of the property at the time, merely for the purpose of showing the situation when the sale was made to Walker, and as a circumstance tending to show the motive that influenced the latter in perpetrating the fraud on this old, weak-minded woman.
With the above as the situation, Walker went to see plaintiff for the purpose of getting her to make the sale to him. Due to the *885 ignorance and lack of intelligence on the part of plaintiff, it is difficult to determine what was said, and impossible to determine the substance of all that was said. Walker failed to take the witness stand, and therefore, as to what passed between the parties in connection with the matter up to the time they went before a notary to execute the act, we must necessarily look to plaintiff’s evidence to ascertain. Due to the causes above stated, that .evidence is meager. It does appear, however, that defendant went to see plaintiff to procure the making of the sale; that he used considerable persuasion to cause her to make it, and told her that he would see to the securing of her rights if she' did make it, and that, unless she secured some one to look after them, she would lose everything, Having finally obtained plaintiff’s consent to sign the instrument, Walker made an engagement with a notary in Shreveport to pass the act. He reached that city with plaintiff at about 7 o’clock at night on the* appointed day. He took no one along to advise her in the matter, and, in so far, as the record discloses, at no time brought her in contact with any one whom she might consult, except the notary, who was representing both parties in passing the act. Apparently Walker had gained plaintiff’s confidence. The notary did his best to explain to her the meaning and purport of the instrument she was about to sign, and, we are satisfied, in the utmost good faith, reached the conclusion that she did understand it, but we are satisfied, as was our learned brother of the court below, that she did not understand and did not know what she was really doing. In fact, we conclude from the evidence that hot only did plaintiff not understand what was being done, but her weak mind gained the impression from what Walker had previously said to her that she was signing an instrument that would protect her in her rights, and would eliminate the danger which he had impressed upon her was hanging over those rights, and of which she speaks in her evidence. She may have had the idea, in addition, that her interest in the oil already produced was being sold, but we do not think she comprehended the rest.
It might be said, however, that plaintiff could not have gained the impression that she was signing an instrument merely for the purpose of protecting her rights, since she acknowledged in the act of sale, which was a notarial one, that she received $1,000 as a consideration for the transfer. We must remember, however, that we are not seeking to. determine the conceptions of a person of ordinary intellect and intelligence, but of one who, we judge from the evidence, and from the opinion of the judge below, was of weak mind. Moreover, evidence was offered to show that, as a matter of fact, no consideration was paid. The evidence offered leaves it far more than doubtful whether anything at all was paid. Nothing was paid in the presence of the notary. He inquired at the time of passing the act whether the consideration liad been paid, and plaintiff replied substantially that the matter had received attention. She testified on the trial that it had not been paid. Hollis, who held a power of attorney from her, and with whom she deposited money from time to time, testified that at that time no money was deposited by her with him. Hence we think that the acknowledgment of payment in the act, which act is shown to be fraudulent, is of no value, under the evidence in this case. It is true that the parol evidence offered to show nonpayment was objected to on the ground that the receipt in the sale controls. If the sale had been attacked by plaintiff on the ground that it was null, because the consideration had not been paid, doubtless the parol evidence offered would not have been admissible to prove the allegation. C. C. art. 2237; Forest v. Shores, 11 La. 416. But *887 in an attack on' the sale to annul it by the vendor on the ground that she is ignorant and of weak mind, and has been imposed upon by the vendee by false and fraudulent representations made to her to induce her to sign it, we see no reason why the fact that no consideration was paid cannot be shown by parol evidence, and otherwise than by a counter letter or answers by the vendee to interrogatories on facts and articles, when the purpose is to show the fact as a mere circumstance tending to prove the fraud and imposition alleged, and as corroborative of the other evidence in the case. We therefore think that the objection was properly overruled.
Our conclusion as to the fraudulent character of the sale is re-enforced by the observation made by the judge a.quo that the defendant, though charged with fraud, failed to take the witness stand. The evidence is sufficiently .strong to make out a prima facie case against him; and the inference therefore arises that he did not testify because he could not do so without strengthening plaintiff’s case. King v. Atkins, 33 La. Ann. 1057.
Entertaining the view that we do, nothing remains but to annul the sale. In volume 12 of Ruling Case Law, § 6, p. 235, it is said in speaking of contracts with persons of weak mind:
“So the acts and contracts of persons of weak understanding, who are therefore liable to imposition, will be held void if the nature of the act or contract justifies the conclusion that the party has not exercised a deliberate judgment, but that he has been imposed upon, circumvented, or overcome by cunning, artifice, or undue influence, and this is true though Ms mental weakness does not amount to insanity.”
The text is appropriate to .this case.
For the reasons assigned, the judgment appealed from is affirmed át appellant’s costs.
O’NIELL, J., being absent from the state, takes no part in the decision of the ease.