Harvey T. Beery, Appellee, v. Ralph Y. Breed, Administrator of Estate of Nellie M. Breed, Deceased, Appellant.

Gen. No. 9,683.

Heard in this court at the May term, 1941.　　　Opinion filed August 7, 1941. Rehearing denied October 7, 1941.

THOMAS J. WELCH and VERA M. BINKS, both of Kewanee, for appellant.

JAMES H. ANDREWS, GREGG A. YOUNG and HARPER ANDREWS, all of Kewanee, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.

This cause is here by appeal from a judgment of the circuit court of Henry county for $10,000 as damages in an automobile accident case. At the close of the plaintiff's evidence, the defendant's motion for a directed verdict was denied, he offered no testimony, and the case went to the jury on the testimony of the plaintiff's witnesses alone.

The original complaint was against Robert B. Keeler. Appellant was added as a defendant, with an averment that Keeler was driving the Breed car as the agent or servant of Nellie M. Breed. The answer denied this charge, but it is not questioned here. Keeler was not served and is not a party to this appeal.

Under the claim that the court erred in denying appellant's motion for a new trial it is urged that the evidence is not sufficient to show appellant's intestate or the driver of her car were guilty of the negligence

charged or that appellee was in the exercise of due care for his own safety. In a prior case appellee's wife recovered judgment against appellant for $5,330 as damages for injuries received in the same accident. The judgment was affirmed by this court. (*Beery v. Breed,* 309 Ill. App. 433.)

The accident occurred on October 14, 1938, about 3:15 p.m. at the Howard Schoolhouse curve on U. S. Route 6, about five miles west of Geneseo. Route 6 is an east and west highway. It curves to the south around the schoolhouse. The Beery car was traveling northwesterly on the curve and the Breed car southeasterly. Appellee, his wife and their son Harvey Lee Beery, nine years old, were in the Beery car. It was being driven by appellee. In the Breed car were appellant's intestate, Nellie M. Breed, her daughter, Audrey Breed, and Robert B. Keeler, her grandson. The latter was driving the Breed car. As a result of the accident appellee, his wife and Robert B. Keeler were severely injured. Nellie M. Breed and her daughter died from their injuries soon afterward.

The testimony on behalf of appellee clearly shows that at the time of the accident he had driven off the right or northerly edge of the pavement about two feet in an attempt to avoid the Breed car, which came down that side of the slab and crashed into the Beery car. Appellee's son testified he first saw the Breed car coming fast over a rise in the road to the west; that he looked at a house and barn, and when he looked back the Breed car was right there, and that appellee turned off the road just before the witness saw the Breed car the second time. Two witnesses, Johnson and Bell, who arrived after the accident, testified there were tire marks in the dust on the right-hand side of the pavement about two feet from it, leading back fifty feet from the Beery car. The testimony of other witnesses shows that after the accident both cars were north of the center line of the pavement. Slight dif-

ferences in their testimony as to the exact location of each car are only such as are usual in such cases. None of them are of any importance. There were some scratches on the pavement north of the center line, running northeasterly toward the Beery car, with the appearance of having been made by a car frame. The argument that they were made by the Beery car and show it was not off the pavement is not supported by any fact in evidence. The testimony on behalf of appellee clearly sustains the negligence charge and his due care.

Appellee is a barber thirty-six years of age. Prior to the accident he was in normal physical condition and in good health. His injuries consisted of cuts and bruises on his body, his left hip was partially dislocated, and his nose was crushed almost level with his face, which was badly lacerated. The tissues were pretty well severed. His upper jaw was fractured, extending through the eye socket, and was loose like an artificial plate. Several teeth were knocked out. He was in a hospital two weeks. His jaws were wired together for three months and he was unable to take solid food for four months. The jaw was still somewhat immovable at the time of the trial about a year and a half after the accident. His left eye bulged with an exophthalmic aspect. He testified his face is numb, his eye is sore and drains continuously at the corner, with a blinking and eye strain; that his nerves are jumpy; that he has a stomach ailment and is restless at night; that he was unable to work for four or five months and could only partially superintend his shop for three or four months more, and cannot now do a full day's work. Medical testimony shows the conditions are permanent, and that his wife is physically and mentally incompetent as a result of her injuries. The complaint includes a claim for damages on account of the loss of her services. The record shows he employed six physicians and surgeons in treating

his injuries, and is still under medical care. He paid $664.85 for his hospital, nurse and doctor bills, and still owes some of the doctors. He paid approximately $800 for help at home. His car was worth $400, and after the accident he was allowed $35 or $40 for it in a trade for a new car.

Appellant urges that inasmuch as he introduced no evidence, repeated comments by appellee's counsel in his closing argument upon the failure to do so, and particularly the failure to produce Keeler, constituted reversible error. Each objection interposed was promptly sustained. Appellee claims the remarks were proper replies to the argument of appellant's counsel. While that argument is not shown by the abstract, the language of the closing argument discloses that in a large measure the matter objected to was in reply to statements of appellant's counsel.

It is impracticable to detail the remarks complained of. The substance of them is that appellee proved his case and that appellant brought no witness but attempted to argue facts not in evidence, claiming there was no eye witness except appellee's son; that Keeler was an eye witness and appellant did not produce him; that appellant's counsel asked why appellee did not bring in another witness to the tire marks in the dust, to which he replied: "Why didn't they bring in a witness there wasn't any tracks?"; that appellant's counsel said the accident was caused by centrifugal force, but it was the driver's duty to avoid such a force, and that Keeler was the name for centrifugal force. Asking if the argument of appellant's counsel was reasonable, he said that if they wanted to show facts they could do so, and "When they sit in court and don't bring witnesses it leaves it up to you to conclude they must be satisfied with the facts we brought in here and brought in all the proofs. They say they want the truth. Why don't they bring in witnesses to prove the facts?" He also said: "I will say this,

they keep talking about there isn't any witness, there is a witness here, there is a real witness to this collision who absolutely saw the accident and was there and is guilty of negligence charged in this suit and that is Robert B. Keeler and he is the grandson of this man." The argument as a whole clearly shows the word "here" related to the lawsuit or occurrence and not the court room. He later said: "I say they have testimony that is available here, that is contrary to what we say and don't bring him in here and absence may be proof of the fact ————." He was here interrupted before he finished the sentence by an objection which was sustained. What fact he would have mentioned if he had not been interrupted, is not a matter for our conjecture.

The books are replete with decisions, in cases where both parties produced testimony, that the failure of one party to bring in an accessible witness, gives rise to the presumption that the testimony of the absent witness would be unfavorable to the party failing to produce him. Cases where a defendant failed to produce any evidence, but rested his defense upon the weakness of the testimony of the plaintiff's witnesses, are not so numerous. We first note that there is no showing that the testimony of Keeler, one of the defendants, was not readily accessible to appellee.

Analysis of the decisions in various jurisdictions discloses that there is but little, if any, difference in the basic principles announced. What might appear to be a lack of harmony on cursory examination is due in some degree to whether the plaintiff made a prima facie case. Wigmore's Evidence (3rd Ed. 1940), sec. 285, says: "The failure to bring before the tribunal some circumstance, document, or witness, when either the party himself or his opponent claims that the facts would thereby be elucidated, serves to indicate, as the most natural inference, that the party fears to do so, and this fear is some evidence that the circum-

stance or document or witness, if brought, would have exposed facts unfavorable to the party." In section 290(5) it is stated: the opponent whose case is a denial of the other party's affirmation has no burden of persuading the jury. A party may legally sit inactive, and expect the proponent to prove his own case. Therefore, until the burden of producing evidence has shifted, the opponent has no call to bring forward any evidence at all, and may go to the jury trusting solely to the weakness of the first party's evidence. Hence, though he take a risk in so doing, yet his failure to produce evidence cannot at this stage afford any inference as to his lack of it; otherwise the first party would virtually be evading his legitimate burden. This distinction has been recognized and is reasonable; but it has been little developed in its application."

20 Am. Jur. Evidence, sec. 133, page 136 lays down the following principles: "Where a prima facie case is made for the party who, in the first instance, has the burden of proof by reason either of a presumption which arises in his favor or of proof which he introduces in support of his claim, the burden of going forward with the evidence and producing further evidence to explain away the case thus made shifts to his adversary, but the burden of proof in the true sense of the word does not, by reason of such prima facie case or presumption, shift to him."

There is no presumption against a defendant for failure to call witnesses, when the plaintiff, carrying the burden of proof, has not made a prima facie case, and such presumption cannot be used to relieve the plaintiff from the burden of proving his case. (*Condon v. Schoenfeld*, 214 Ill. 226; *Hutcheson v. Savings Bank of Richmond*, 129 Va. 281, 105 S. E. 677; *Stimpson v. Hunter*, 234 Mass. 61, 125 N. E. 155, 7 A. L. R. 1067; *Loper v. Askin*, 178 App. Div. 163, 164 N. Y. S. 1036.) On the other hand, where the plaintiff makes a prima facie case, the failure of the defendant to produce any

evidence warrants the inference that the testimony would be unfavorable to him, (*Logan v. Walker*, 152 La. 880, 94 So. 430), and may be considered by the jury. (*One Buick Automobile v. United States*, 275 Fed. 809.)

The leading case where it is held that comment upon the failure of a defendant to produce any evidence is reversible error is *McDuffee's Admr'x v. Boston & M. R. R.*, 81 Vt. 52, 69 Atl. 124. The holding is cited in 2 R. C. L. 413; 64 C. J. 270; 22 Id. 112; and is strongly relied upon by appellant. In that case the plaintiff's intestate, an employee of the defendant, died from being struck by a water tank spout while standing on top of a moving train with his face in the opposite direction. The railroad company introduced no testimony, and the plaintiff introduced none to show the decedent did not know of the spout or its danger. The court permitted the plaintiff's counsel to refer to what the defendant might and could have proved in that respect by evidence peculiarly within its knowledge. The court held the remarks were prejudicial and reversed a judgment for the plaintiff. But it is to be observed that the court held: ''The burden was upon the plaintiff to show that her intestate did not know of the existence of the danger. . . . For aught we know the jury may have found upon this argument alone that the intestate did not know of this danger.'' It thus appears the plaintiff in that case did not produce evidence sufficient to make out a case.

In *Robins Dry Dock & Repair Co. v. Navigazione Libera Triestina, S. A.*, 32 F. (2d) 209, the defendant's ship was moored at the plaintiff's slip. The captain of a towing company's tug was on the bridge of the ship with the ship's captain, mate and a pilot. He testified he signaled the ship's engineer to back the ship, and the signal was answered. The ship went forward, broke a line and injured the dock. The trial court refused to permit the plaintiff's counsel to comment on the defendant's failure to produce the engi-

neer, captain and mate of the ship. The reviewing court approved the ruling, citing the *McDuffee* case as authority. In the course of the opinion the court pointed out that "The plaintiff had the burden to prove actionable negligence on the part of the defendant, and was not entitled to a verdict simply by showing that the ship went ahead after Healey (captain of the tug) gave an order to put it astern." This case is in the same class as the *McDuffee* case.

In *Sandberg v. Chicago Rys. Co.*, 191 Ill. App. 199, plaintiff's counsel in the argument commented upon the fact that the defendant had not produced as witnesses persons whom its counsel said in his opening statement were on the car and knew how the accident happened. In reversing a judgment for the plaintiff the court specifically said that the evidence of defendant's negligence and of due care on the part of plaintiff's intestate was so meager as to leave much that was essential for inference.

*Cooper v. Metropolitan Life Ins. Co.* (Mo. App.), 94 S. W. (2d) 1070, holds the failure of a party to produce evidence peculiarly within his knowledge or control and which he would naturally be expected to produce if favorable to him, gives rise to a presumption it would be unfavorable to him, but that the presumption does not apply when the evidence is equally available to either party.

In *Hinchman v. Pere Marquette Ry. Co.*, 136 Mich. 341, 65 L. R. A. 553, the court reversed a judgment for plaintiff because of erroneous instructions and in his argument counsel told the jury that a fireman not produced was still in the defendant's employ, when there was no such evidence.

The foregoing cases are relied upon by appellant, but it is obvious that none of them is persuasive here.

In the following cases, where the plaintiff made out his case and the defendant introduced no evidence, it was held a presumption or inference arose that the

testimony would have been unfavorable to the defendant. (*Stocker v. Boston & M. R. R.,* 84 N. H. 377, 151 Atl. 457, 70 A. L. R. 1320; *Rioux v. Cronin,* 222 Mass. 131, 109 N. E. 898; *Powell v. Strickland,* 163 N. C. 393, 79 S. E. 872; *Barber v. Nunn,* 275 Mo. 565, 205 S. W. 14; *Moore v. Smith,* (Mo. App.) 255 S. W. 1071; *Henderson v. Ball,* 193 Iowa 812, 186 N. W. 668; *Bone v. Hayes,* 154 Cal. 759, 99 Pac. 172; *Howe v. Howe,* 199 Mass. 598, 85 N. E. 945; *Attorney General v. Pelletier,* 240 Mass. 264, 134 N. E. 407; *Succession of Levitan,* 143 La. 1025, 79 So. 829, 2 A. L. R. 1646.

It is manifest that if the failure to produce testimony creates an unfavorable presumption against the party failing to produce it, comment on such failure is proper. The following cases uphold the right to comment upon such failure: *Smith v. Kansas City Rys. Co.,* 208 Mo. App. 139, 232 S. W. 261; *Powell v. Strickland, supra; Cheraw Motor Sales Co. v. Rainwater,* 125 S. C. 509, 119 S. E. 237; *Brito v. Newmarket Mfg. Co.,* 79 N. H. 163, 106 Atl. 224; *Cincinnati N. O. & T. P. Ry. Co. v. Tucker,* 168 Ky. 144, 181 S. W. 940; *American Steel Foundries v. Kistner,* 136 Ill. App. 48. The judgment of the Appellate Court in the latter case was reversed on the ground of assumed risk, but no comment was made on the holding as to argument of counsel. The evidence on behalf of appellee in the case at bar clearly and fully established his case. Under the rules of law and the authorities above cited, his counsel had the right to comment upon the failure of appellant to produce any evidence.

It is also claimed the verdict is excessive and was induced by inflammatory and prejudicial remarks of appellee's counsel. We know of no rule of law which required counsel to refrain from saying appellant's counsel sought to make liars of appellee's witnesses, or from saying that Keeler was the name for centrifugal force, when opposing counsel had disparaged the testimony of the witnesses and had attributed the acci-

dent to centrifugal force. Appellee's wife suffered a skull fracture and a compound fracture of one leg. The remark that the accident made her a wreck and that she is insane were within the testimony and competent as bearing upon the question of the loss of her services. Appellee's counsel went outside the allegation of damages for loss of services of the wife when he referred to the loss of her companionship, and said a man had a right to bring suit for loss of association of his wife, and that it was a damage the law recognized and for which money could not compensate him. An objection to the statement was promptly sustained and it was not repeated. Appellant did not ask the court to instruct the jury to disregard the remarks, but was content with the ruling. Ordinarily he should not now be permitted to urge the objection. (*Quincy Gas & Electric Co. v. Baumann,* 203 Ill. 295 (298); *City of Chicago v. Leseth,* 142 Id. 642.) However, a verdict will be set aside, although objections have been sustained to improper remarks, if they were of such a character as to prejudice the party against whom they are made. (*Chicago North Shore & Milwaukee R. Co. v. Chicago Title & Trust Co.,* 328 Ill. 610; *Appel v. Chicago City Ry. Co.,* 259 Id. 561.) But a judgment will not be reversed for improper conduct of counsel unless the conduct is prejudicial. (*People v. Hartford Life Ins. Co.,* 252 Ill. 398; *Heineke v. Chicago Rys. Co.,* 279 Id. 210.) No reason, except the alleged prejudicial remarks, is urged as to why appellant's admittedly permanent injuries and the loss of his wife's services do not justify the amount of the verdict. In view of their character and extent and their permanent nature we do not think the verdict can be said to be excessive on that account. If the case were close on the facts, or there were any other error in the proceedings which was prejudicial, or if we could say the amount of the verdict could have been the result of the re-

marks, we would not hesitate to reverse the judgment. The statements as to the loss of companionship were improper, but the jury would so understand from the ruling of the court. There was evidence that appellee had paid approximately $800 up to the time of the trial for help occasioned by the loss of his wife's services, and that prior to the accident she did all the household work. We are unable to say the remarks inflamed or influenced the jury in the amount of their verdict, or that another trial, with the improper remarks eliminated, would probably result in a verdict for a lesser amount. It is not required that a record be free from error, and a judgment will not be reversed for errors unless it can be seen they were prejudicial. Where, as here, substantial justice appears to have been done, the verdict will not be set aside. (*Herdien v. Jones,* 202 Ill. App. 172; *Kauffman v. Sanner,* 184 Id. 163.)

Two instructions are complained of because they do not in words charge the acts of Keeler were the "proximate cause" of the injuries. After stating that the law in this State requires a driver to keep to the right side of the black line of a pavement, the instructions told the jury that if they believed from the evidence that Keeler carelessly and negligently drove across the black line to the left into appellee's car "so that" appellee was injured as complained of, and that appellee was in the exercise of ordinary care for his own safety and that of his car, they should find for the plaintiff. The words "so that" were used as the equivalent of proximate cause and any layman would so understand them. An analogous instruction was approved in *Chicago & Eastern Illinois Railroad Co. v. Crose,* 214 Ill. 602, where the same objection was raised.

Finding no reversible error in this record the judgment will be affirmed.

*Judgment affirmed.*