Sine Petersen, Appellee, v. General Rug and Carpet
Cleaners, Inc., and General American Transpor-
tation Corporation, Appellants.

Gen. No. 43,786.

48

Opinion filed December 30, 1947.
Released for publication January 28, 1948.

GARDNER, CARTON & DOUGLAS, of Chicago, for certain
appellant; ERWIN W. ROEMER, JAMES A. VELDE and
C. STARK RITCHIE, all of Chicago, of counsel.

VOGEL & BUNGE, of Chicago, for certain other appel-
lant; LESLIE H. VOGEL, ROBERT C. VOGEL and FORREST S.
BLUNK, all of Chicago, of counsel.

JOSEPH D. RYAN and LOUIS P. MILLER, both of Chi-
cago, for appellee.

MR. JUSTICE SCANLAN delivered the opinion of the
court.

Action to recover damages for personal injuries sus-
tained by plaintiff. A jury returned a verdict finding

both defendants guilty and assessing plaintiff's damages at $12,500. Motions made by each defendant for a directed verdict, for a new trial and for judgment notwithstanding the verdict were all overruled. Each defendant filed an appeal from the judgment.

The complaint alleges:

"1. *On July 7, 1944, Cicero Avenue was a heavily traveled public street which ran north and south in Chicago, Cook County, Illinois, and crossed and intersected Grand Avenue, another heavily traveled public street which ran generally northwest and southeast in said city.*

"2. *At the time of the accident hereinafter complained of, which occurred on said date, traffic at the intersection was being regulated by electrically operated traffic control signals, exhibiting different colored lights successively, known as stop and go lights, by means of which such traffic was alternately directed to stop and to proceed.*

"3. At the time of the accident . . . the plaintiff, a pedestrian, was crossing Cicero Avenue from the east to the west side thereof, within the north crosswalk of Grand Avenue.

"4. *While the plaintiff was crossing Cicero Avenue as aforesaid, the defendant General Rug and Carpet Cleaners, Inc., a corporation,* . . . *by its agent and servant, was driving a motor truck north on Cicero Avenue, at the place aforesaid, and the defendant General American Transportation Corporation,* . . . *by its agent and servant, was driving a motor vehicle, commonly known as a station wagon, north on Cicero Avenue, at the rear of the said truck; and both vehicles were approaching the plaintiff's line of travel.*

"5. At the time of the accident hereinafter complained of, and at all times prior thereto, the plaintiff was in the exercise of ordinary care for her own safety.

"6. At said time and place, the defendant General Rug and Carpet Cleaners, Inc., a corporation, by its agent and servant:

"(a) Carelessly and negligently drove and operated its said truck.

"(b) Carelessly and negligently drove the said truck toward and across the intersection at a speed greater than was reasonable and proper having regard to the traffic and the use of the way or so as to endanger the life or limb or injure the property of persons on said public highway at the place aforesaid; contrary to and in violation of the provisions of paragraph (a), Section 49, Article VI, of the Uniform Act Regulating Traffic on Highways, of the State of Illinois [Ill. Rev. Stats. 1945, ch. 95½, par. 146, subpar. (a); Jones Ill. Stats. Ann. 85.178, subpar. (a)].

"(c) Carelessly and negligently failed to keep a reasonably careful lookout for pedestrians crossing Cicero Avenue, at the place aforesaid.

"(d) Carelessly and negligently failed to give the plaintiff audible warning of the approach of the truck, with the horn thereof, although such warning was reasonably necessary to insure its safe operation; contrary to and in violation of the provisions of Section 115 of Article XV, of the Uniform Act Regulating Traffic on Highways, of the State of Illinois [Ill. Rev. Stats. 1945, ch. 95½, par. 212; Jones Ill. Stats. Ann. 85.244].

"(d two) Carelessly and negligently failed to yield the right of way to the plaintiff, who had started to cross the street while the color green alone was shown on the traffic control signals regulating east and west bound traffic on Grand Avenue, and who was lawfully within the intersection when the said traffic light changed to green alone for north and south bound traffic on the said Cicero Avenue; contrary to and in violation of the provisions of subparagraph 1, of paragraph (a), of Section 32, of Article III of the Uniform Act Regulating Traffic on Highways, of the State of Illinois [Ill. Rev. Stat. 1945, ch. 95½, par. 129, subpar. (a) 1; Jones Ill. Stats. Ann. 85.161, subpar. (a) 1].

"(e) Carelessly and negligently operated the said truck toward and past the plaintiff while she was lawfully crossing the street as aforesaid, and carelessly and negligently drove and abruptly turned the said truck in such close and dangerous proximity to the plaintiff that she was thereby, then and there, caused to stop and remain standing momentarily in said street, at a time when she was likely and liable to be struck and injured by other traffic then and there approaching said crosswalk in the rear of the said truck."

The complaint makes similar allegations of negligence against General American Transportation Corporation (hereinafter also called Transportation Corporation) as are made against General Rug and Carpet Cleaners, Inc. (hereinafter also called General Cleaners), but paragraph (e) as to Transportation Corporation reads as follows:

"(e) Carelessly and negligently followed more closely in the rear of the said truck than was reasonable and prudent, having due regard for the speed of both vehicles and the traffic upon the highway; contrary to and in violation of the provisions of paragraph (a), of Section 61, of Article VII, of the Uniform Act Regulating Traffic on Highways, of the State of Illinois [Ill. Rev. Stat. 1945, ch. 95½, par. 158, subpar. (a); Jones Ill. Stats. Ann. 85.190, subpar. (a)]; by reason of which defendant's driver carelessly and negligently swerved his vehicle suddenly toward the plaintiff, when the speed of the said truck was diminished."

The complaint also alleges:

"8. By reason of the joint, several and concurrent negligence of the said defendants and each of them, and as a direct and proximate result and in consequence thereof, the said station wagon then and there ran upon and against the plaintiff and threw her violently to the pavement, as a direct and proximate result of which she sustained numerous severe and permanent injuries, both external and internal . . . .

"Plaintiff, Sine Petersen, asks judgment for Thirty Thousand Dollars."

The only witness who testified as to the manner of the accident was plaintiff, who testified that on the day of the accident she walked from her home to Grand avenue, where she took a westbound Grand avenue car; that it was her intention to get off that car at Cicero avenue and take a Cicero car south; that the car she was on stopped at Cicero avenue and she stepped down and looked back to see if any cars were coming; that no cars were coming and she walked over to the sidewalk; that she then looked back to see if any streetcars were coming and she saw a couple of women boarding the streetcar that she had just alighted from; that she then turned and walked west to the curb; that she looked to see what kind of lights there were and she saw that it was the green light for Grand avenue traffic; that when she started across the street she was about in the middle of the north crosswalk on Grand avenue and the light was still green in her favor; that the streetcar from which she had alighted started west at the same time that she did; that it went faster than she did and it passed her when she came to the east rail of the northbound streetcar track on Cicero avenue; that she then heard a noise and something came in front of her; that "I guess that scared me"; that she stopped; that she was then in the northbound car track; that she "just heard something, and the next instant, you know, I didn't know any more"; that she was struck by something; that when she got over in the car track "and just before this thing passed in front of me, I didn't hear any horns. I am a little hard of hearing, but I hear a horn promptly. As to whether I could hear a horn before the accident, I didn't hear it. I don't think he blowed it. . . . In moving about Chicago I could hear the bell on a street car." Upon cross-examination she testified that when the streetcar slipped past her she took a few steps more

until she got on the track; that she was sure she got on the track; that she did not know whether she got more than just across the first rail because something passed in front of her, "that didn't hit me"; that she had just gotten into the northbound track when something swerved and passed her and that she remained standing from that time on and stopped "when that passed me. It brought me up; you know, kind of hard. It was just an instant, I think, before I was hit"; that she stopped right in her tracks and the next thing she remembered she was lying on her arm. *Neither defendant introduced any evidence.*

The questions raised on this appeal by the two defendants are not always the same.

Each defendant contends that there was no evidence tending to prove that it was guilty of negligence as charged. Defendant General Cleaners, in support of its said contention, raises and argues at great length a further contention that "there is no evidence identifying this defendant's vehicle as the 'thing' that passed in front of plaintiff before she was struck"; that plaintiff's evidence does not show that any vehicle belonging to this defendant was involved in the accident; that "plaintiff's failure to prove one of the basic facts essential to a *prima facie* case was not cured by the remarks in the opening statement of counsel." Counsel for plaintiff contends that plaintiff was not required to prove facts which defendants admitted in their pleadings and in their opening statements. It is important to note that each defendant admitted in its answer the allegations of paragraphs 1, 2 and 4 in the complaint, heretofore set out with the said paragraphs italicized. Neither defendant filed a plea of nonownership and control of the instrumentality involved in the accident. Counsel for plaintiff in his opening statement to the jury stated that the first of the two vehicles involved in the accident, a truck, was the truck of General Cleaners, and the second one, a station

wagon, was the station wagon of Transportation Corporation. The opening statement of counsel for defendant General Cleaners commenced as follows: "May it please the Court, ladies and gentlemen of the jury: I represent the General Rug and Carpet Cleaners, *and they were the owners of the first of these two north bound trucks* that Mr. Ryan [counsel for plaintiff] spoke about in his opening statement. As far as we are concerned, there will be no questioning about the happening of the accident, the place, the day, or the time, or anything of that kind. *The driver of our truck* had had a great many years of driving experience. It was a panel body truck. . . . *as he tells me,* . . . It was a dark green truck." The counsel then proceeded to state what the evidence would show as to the manner of the accident. The opening statement of counsel for Transportation Corporation commenced as follows: "May it please the Court, ladies and gentlemen of the jury: I shan't take a lot of your time, because I think there will be a little dispute with reference to where these vehicles were in the street where Mrs. Petersen was at the time of the accident. *This station wagon, as it is called, was being driven by a man by the name of Havling, who worked for us at that time as a driver.*" The counsel then proceeded to state what he expected the evidence would prove as to the manner of the accident. Counsel for plaintiff cites numerous cases in support of his position that plaintiff was not obliged to prove facts which defendants admitted in their opening statements. General Cleaners admits that in a number of the States the rule contended for by plaintiff prevails, but it insists that "the rule in Illinois is that counsel's statements in the opening statement to the jury are not admissions that dispense with proof." It claims that *Pietsch v. Pietsch,* 245 Ill. 454, is the leading Illinois authority upon the question and that it sustains the contention of General Cleaners, defendant. That there is lan-

guage in the opinion in that case which appears to sustain the position of General Cleaners may be conceded. However, it is necessary to note what the Supreme court was called upon to decide in the *Pietsch* case. There the trial court directed a verdict for the plaintiff at the conclusion of the opening statement of counsel for the defendant and the propriety of that action was the sole question before the Supreme court, and it was held that the action of the trial court was contrary to the practice followed in Illinois. JUDGE CARTWRIGHT, who wrote the opinion in the *Pietsch* case, cites *Lusk v. Throop,* 189 Ill. 127, as an authority for the proposition that an opening statement of a counsel cannot be treated as an admission of facts binding upon his client, but in the *Lusk* case the appellants complained that the trial court erred in refusing to give an instruction asked by them, and in answering this contention the Supreme court states (p. 143):

"This instruction was properly refused. In *DeWane v. Hansow,* 56 Ill. App. 575, it was said: 'While the office of a jury statement is to enlighten the jury upon the issues involved, so as to prepare their minds for the evidence to be heard, and the attorney making it should confine himself to the proposed proofs, and make it sufficiently full for their understanding of the case, *the plaintiff is not confined to the facts recited in the statement.*' Thompson in his work on Trials (vol. 1, sec. 267,) says: '*Counsel is not confined in the introduction of evidence to the statement which he makes in the opening of his case,* since this would oblige him at his peril to announce to the jury each item of evidence which he intended to introduce.' " (Italics ours.)

In the instant case neither defendant offered any evidence, and the *Lusk* case is not an authority in support of the instant defendant's real contention, *viz.,* that its counsel could not make a statement in his opening statement to the jury that would amount to

an admission of fact that would bind it. JUDGE CART-WRIGHT also cited and approved an English case which held that the trial judge had no right to nonsuit a plaintiff upon his counsel's opening statement without the consent of his counsel; that such a practice would be dangerous to the rights of litigants and a suitor might lose his case because his counsel had omitted or misstated something in the opening statement. A Wisconsin case is also cited where a rule similar to the one announced in the English case is followed. JUDGE CARTWRIGHT states that *the only purpose of an opening statement is "to give the jury an idea of the nature of the action and defense,"* (245 Ill. p. 457) and it is that kind of an opening statement that the judge had in mind when he used the language upon which General Cleaners relies. In our judgment the *Pietsch* case is an authority for the proposition that in Illinois the practice does not obtain for the trial court to direct a verdict at the close of the opening statement of a litigant's counsel, but we do not believe that the court intended in that case to hold that regardless of the nature of an admission made in an opening statement it cannot be treated as an admission of fact that is binding upon the client. "A judicial opinion, however, like a judgment, must be read as applicable only to the facts involved and is an authority only for what is actually decided. (*Rolfe v. Hewitt,* 227 N. Y. 486.)'" (*White v. Seitz,* 342 Ill. 266, 270.) MR. JUSTICE O'CONNOR, a learned and experienced judge, wrote the opinion in *Reilly v. Peterson Furniture Co.,* 314 Ill. App. 46, and he interprets the *Pietsch* case as we do. He states (p. 51): "The fact that in Illinois the practice does not obtain in directing a verdict at the close of the opening statement of plaintiffs' counsel (*Pietsch v. Pietsch,* 245 Ill. 454; *Sun Oil Co. v. Garren,* 261 Ill. App. 513) does not change the substantive rule of law announced in the opinion by the Chief Justice [*Oscanyan v. Arms Co.,* 103 U. S. 261, 263]''; and he quotes, with approval,

the following from the opinion in the *Oscanyan* case (p. 51): " 'The power of the court to act upon facts conceded by counsel is as plain as its power to act upon evidence produced. . . . But the power is not properly exercised if the opening statement leaves doubt as to the facts or permits conflicting inferences. . . .' " Counsel frequently make admissions of fact in their opening statements, and it is often considered, by astute lawyers, good strategy to do so. In the instant case the counsel for defendants were able practitioners, experienced in the trial of personal injury cases, and they did not, after they had made the admissions, withdraw or modify them. We do not hold that all of the statements made by the two counsel in their opening statements amount to admissions of fact; for example, counsel for General Cleaners stated in his opening statement: "I don't think that there will be any claim that he [referring to the driver of General Cleaners' vehicle] was going over twenty or twenty-five miles an hour . . . ," and counsel for plaintiff insists that this statement should be taken as an admission by that defendant of the speed at which its vehicle was traveling at the time of the accident, but we do not think that this statement can be so regarded. We hold that counsel for defendant General Cleaners admitted, in definite and plain language, that it was the owner of the first of the two northbound vehicles that Mr. Ryan spoke about in his opening statement and that this admission was binding upon his client. Furthermore, the admissions were but amplifications of the admissions made in the answers of defendants. It would be, in our considered judgment, a perversion of justice to sustain the instant contention of General Cleaners. However, if we were to entirely disregard the admissions made in the opening statement by General Cleaners it would avail that defendant nothing, as its answer to paragraph 4 of the complaint, coupled with the testimony of two police officers, Glavin and

Nichol, make out a *prima facie* showing that the first of the two vehicles involved in the accident was owned by defendant General Cleaners. Officer Glavin, who arrived at the scene of the accident a few moments after it happened, testified that as soon as he arrived he found there Zasinowich, "the driver for the General truck, for the General Rug Cleaners," and that he took a statement from him. This testimony was corroborated by Officer Nichol. There is no merit in the instant contention of defendant General Cleaners. It is due Transportation Corporation to say that it does not seek to avoid the effect of the admission made by its counsel in the opening statement that the station wagon involved in the accident was being driven by its employee.

█ █ Defendant Transportation Corporation contends that "there is no evidence in the cause proving or tending to prove that the defendant, General American Transportation Corporation, was guilty of the negligence as charged." Defendant General Cleaners makes a like contention. Defendants offered no evidence and stood on their motions to direct a verdict. Neither defendant, in its brief, makes any direct claim that plaintiff was guilty of contributory negligence. Plaintiff started across the crosswalk with the green light in her favor and at the same time the streetcar from which she had alighted also started westward to cross the intersection. It is a reasonable inference from the evidence that the motorman started across the intersection with the green light in his favor. Plaintiff had a right to assume that vehicles approaching from the south and north would operate toward and over the intersection at a reasonable rate of speed; that they would keep a reasonably careful lookout for plaintiff; that the driver of a vehicle would have it under such control as would enable him to avoid collision with plaintiff, and that he would yield the right of way to her. In *Mahan v. Richardson*, 284 Ill. App. 493, we held that a pedestrian entering a street intersec-

tion with the light in his favor was rightfully upon the street intersection and the fact that while he was crossing the intersection the light changed did not give traffic proceeding in the opposite direction the right to then cross the intersection without permitting him a reasonable time to complete his crossing, and we stated that any contrary rule would produce a highly dangerous and intolerable condition at busy street intersections in great cities. We cited numerous authorities in support of our ruling. There is no merit in defendant's contention that the ruling in the *Mahan* case conflicts with the ruling in *Moran v. Gatz,* 390 Ill. 478. In the *Moran* case the Supreme court discussed the statutory right of way of a pedestrian at crossings *where the crossing was not controlled by traffic lights.* The opinion states (pp. 481, 482):

"Regardless of the statute in question [Ill. Rev. Stat. 1945, chap. 95½, sec. 171 (Jones Ill. Stats. Ann. 85.203)], however, it has long been the rule in this State that the driver of a vehicle on a city street is charged with a duty to exercise reasonable care in the operation of his vehicle and to have his vehicle under such control as will enable him to avoid collision with other vehicles or pedestrians. He is charged with notice that pedestrians may cross the street over which he is driving, and other vehicles may be traveling over a cross street. (*Harrison v. Bingheim,* 350 Ill. 269.) . . . In this case, appellee testified that he could not see a pedestrian approaching his car from the left, as the range of his city driving lights was to the right. It was therefore his duty to so drive his car as to have it under such control as to enable him to avoid collision with other vehicles or pedestrians, and whether he was driving in accordance with his duty to yield the right of way to pedestrians at a crosswalk was a question of fact for the jury.

"On the other hand, it was appellant's duty to so conduct herself as to be free from contributory negligence. She had no right to rely entirely on the fact

that she had the right of way. Neither had she a right to unreasonably intrude herself into the midst of traffic. The danger of such an act on her part would be apparent and have a natural tendency to hold her back, and if she carelessly got herself into such a position, the law charges her with contributory negligence and leaves her remediless."

Although the Supreme court was there passing upon a case where there were no traffic control signals at the place of the accident, nevertheless, if the principles that the Supreme court applied to that case were applied to the instant case it would make the conduct of the drivers in the instant case gross negligence, at least. Defendants admit that the statute (ch. 95½, par. 129, sec. 32 (a), Ill. Rev. Stat. 1945 [Jones Ill. Stats. Ann. 85.161, subpar. (a)]) provides that "Pedestrians facing the signal may proceed across the roadway within any marked or unmarked crosswalk," and that "vehicular traffic shall yield the right-of-way . . . to pedestrians lawfully within the intersection at the time such signal is exhibited," but they argue that the statutory right of way is not absolute or inflexible and does not relieve the person having the right of the duty to exercise due care under the circumstances, and *Moran v. Gatz, supra,* is cited in support of this argument. The statement in the opinion in that case that while the law gives pedestrians the right of way at crosswalks, it does not absolve them from the duty to exercise ordinary care for their own safety, is, of course, a sound principle. We did not hold in the *Mahan* case, as defendants argue, that a person who starts across an intersection with the green light in his favor is absolutely entitled to the right of way under any and all circumstances. We did hold, however, that where a person, in reliance upon a green light, has committed himself to a crosswalk, traffic proceeding in an opposite direction upon a change of lights is required to observe his right of way and give him

a reasonable chance to reach a place of safety. Defendants also cite a statement in the *Moran* case that the plaintiff therein had no right to unreasonably intrude herself into the midst of traffic. That statement has no application to the facts of the instant case, where plaintiff entered the crosswalk with the green light in her favor, and there is no evidence to show that she "intruded herself into the midst of traffic." It will be noted that the plaintiff in the *Moran* case obtained a verdict and judgment in the trial court, which judgment the First Division of this court reversed, without remandment, upon the ground that the plaintiff in that case was guilty of contributory negligence as a matter of law, and the Supreme court reversed the judgment of the Appellate court. The opinion of the Supreme court in the *Moran* case is, in our judgment, adverse to the instant contention of defendants. Defendant General Cleaners *argues that if the streetcar had not been there its driver, approaching from the south, would have seen that plaintiff was in the crosswalk, that she had the right of way, and that no matter how reasonably careful the driver was in keeping a lookout, he could not have seen plaintiff until it was too late to do anything but pass in front of her.* Each defendant admits in its answer that Grand avenue and Cicero avenue were heavily traveled public streets and that traffic at the intersection was regulated by electrically operated traffic control signals. Counsel ignore the plain fact that the drivers of the vehicles were presumed to have known that pedestrians were apt to be crossing the intersection, and that it was their duty to have their vehicles under control so that when the streetcar passed beyond their right of travel they could slow down, or stop their vehicles, if necessary, to observe the situation at the crossing, and the jury were fully warranted in inferring from the evidence that the drivers of both vehicles were in such haste to proceed that they drove into the intersection and over the cross-

walk without first observing the situation at that place, and that they were upon plaintiff before they made any effort to avoid hitting her. Indeed, they had given no warning of their intention to proceed over the crosswalk. If they had paused but for a few seconds when the streetcar passed they would have seen plaintiff proceeding upon the crosswalk and would have had ample opportunity to avoid injuring her. *While defendants admit that "if the street car had not been there, a driver approaching from the south would have seen that she was in the crosswalk and that she had the right of way,"* they make the strange argument that plaintiff by her own act prevented the driver "from knowing that she was in the crosswalk with the right of way." They state that plaintiff did not rely upon her right of way but relied upon the parallel movement of the streetcar and that she did not realize that the streetcar would hide her from vehicles approaching when the light changed. The strained nature of this argument shows how difficult it is for even astute counsel to justify the conduct of the drivers just before and at the time of the accident. Plaintiff's testimony shows clearly that she started to proceed across the crosswalk because the light was green in her favor. While she testified that the westbound streetcar started west at the same time that she did, there is nothing in her testimony to warrant the statement that in proceeding across the crosswalk plaintiff relied upon the parallel movement of the streetcar and that she did not rely upon the fact that the light was in her favor. The admission of counsel that if the streetcar had not been there a driver approaching from the south would have seen that plaintiff was in the crosswalk and that she had the right of way, proves conclusively that if the two drivers had waited but a few seconds after the streetcar passed they would have seen plaintiff on the crosswalk, and by the exercise of any care they would have avoided injuring her.

■ Both defendants contend that the trial court committed reversible error in admitting in evidence certain testimony of Dr. Vaughan to the effect that a fracture appeared on the film that he was interpreting, as the answer of the doctor was not based upon a reasonable degree of medical certainty. The record shows that after considerable discussion over the admissibility of the evidence counsel for plaintiff agreed that the question and answer might be stricken, and the court thereupon instructed the jury to disregard the answer. At this point counsel for General Cleaners stated: "Judge, I didn't say anything, but I didn't ask that that answer be stricken. I didn't want the record to appear that I have agreed to the striking of that answer. I tried hard to keep it out, but now that it is made I want it to stay in." It is difficult to believe that the instant contention, insofar as it pertains to General Cleaners, is seriously made. In *N. Y., C. & St. L. R. R. Co. v. Blumenthal,* 160 Ill. 40, the court states (p. 50): "We fail to see how counsel for appellant can now complain, that the evidence was allowed to remain in the case, when they themselves opposed its exclusion and objected to its withdrawal from the consideration of the jury." As to Transportation Corporation: Dr. Vaughan's testimony related solely to alleged injuries that plaintiff suffered as a result of the accident, and as Transportation Corporation does not contend, in its brief, that the damages awarded are excessive, the determination of its contention as to the testimony of Dr. Vaughan is without point. In addition, Dr. Vaughan's testimony was merely cumulative and corroborative of the testimony given by Dr. Grant.

Defendant General Cleaners contends that the trial court erred in giving on behalf of plaintiff instructions seven and twelve. Instruction seven defines the issues and informs the jury under what facts they might return a verdict for plaintiff. Like instructions have frequently been approved. (See *Howard v. Baltimore*

& O. C. Terminal R. Co., 327 Ill. App. 83, 94, and cases cited therein.) We find no merit in the instant contention.

. Transportation Corporation contends that the court erred in giving instruction twenty-six to the jury. It reads as follows:

"The jury are instructed that the number of credible and unimpeached witnesses, if any, testifying on the one side or the other of a disputed point is a proper element for the jury to consider in connection with all other facts and circumstances in evidence, in determining where lies the preponderance of the evidence."

■ Said defendant admits that if the facts had been contested and witnesses had been called upon each side the instruction would be proper, but that it was not proper in the instant case because defendant offered no evidence. The question of the preponderance of the evidence was submitted to the jury in instructions nine, twenty-three and forty-one, given at the request of this defendant. It has been repeatedly held that a party cannot complain of alleged error in his opponent's instructions where his own instruction contains the same alleged error. We need only cite a late case, Comrs. of Lincoln Park v. Schmidt, 375 Ill. 474, 477. Transportation Corporation complains that the court erred in giving to the jury plaintiff's instruction forty-four, which reads as follows:

"You are instructed that if you find from a preponderance of the evidence, under the instructions of the court, that the defendants, or either of them, was guilty of one or more of the charges of negligence set forth in plaintiff's complaint, and that at and before the happening of the accident the plaintiff was in the exercise of ordinary care for her own safety, and if you further believe that the defendants or either of them had available and subject to their or its control a witness or witnesses who saw the accident in question or any part of it, then you are instructed that the failure of defend-

ants or either of them to call such witness or witnesses may give rise to a presumption that the testimony of such witness or witnesses, if produced, would have been unfavorable to such defendant, or defendants."

There is no merit in the instant contention. See *Beery v. Breed,* 311 Ill. App. 469, 475, 476, 477, 478 (App. Den., 316 Ill. App. xiii), where the question as to the right of counsel to comment upon the failure of the opposite side to produce testimony is discussed at length, and numerous authorities are cited in support of the ruling that "where the plaintiff makes a prima facie case, the failure of the defendant to produce any evidence warrants the inference that the testimony would be unfavorable to him (*Logan v. Walker,* 152 La. 880, 94 So. 430), and may be considered by the jury. (*One Buick Automobile v. United States,* 275 Fed. 809.)," and comment on such failure is proper. Several of the cases cited by this defendant are referred to in the *Beery* case. If it is proper for counsel to comment upon the said failure there would seem to be no good reason why an instruction like the one in question should not be proper. This defendant makes the point that there is no proof that the drivers were under the control of defendants or accessible to them as witnesses. It is clear from the opening statements that at the time of making the statements defendant intended to call as witnesses the two drivers. Counsel for General Cleaners stated in his opening statement that its driver had furnished him with certain information. It is a reasonable inference from the record that the reason that they did not produce them was that the testimony for plaintiff showed that the police officers, immediately after the accident, took statements from the drivers and these statements could have been used by plaintiff if the drivers had been called as witnesses by defendants. If the two drivers were not available to defendants they had the right to show that fact, but neither made any attempt to prove that the employees

were not still in their employ nor that they were not available as witnesses. It is evident that if testimony of the two drivers would have helped defendants their able attorneys would have called them as witnesses. In 2 Wigmore on Evidence (3d ed.), sec. 437, it is said:

"When the existence of an object, condition, quality, or tendency at a given time is in issue, the *prior existence* of it is in human experience some indication of its probable persistence or continuance *at a later period.*"

█ The contention that plaintiff's instruction forty-four is inconsistent with defendant's instruction eleven is without merit. Transportation Corporation contends that the verdict and judgment are clearly against the manifest weight of the evidence. As defendants offered no evidence we must assume that this contention, not argued, was inadvertently raised.

Transportation Corporation, *alone,* contends that the trial court erred in submitting to the jury at the request of plaintiff two special interrogatories. We have considered the argument made in support of this contention and find that the criticism of the two interrogatories is hypercritical. It is significant that General Cleaners has not seen fit to criticise these special interrogatories.

██ General Cleaners, *alone,* contends that the damages awarded are grossly excessive. After the accident plaintiff was taken to the Danish-American Hospital, where she remained until July 15, when she was removed to the Osteopathic Hospital. At that time her condition was described as critical. She was still suffering from concussion of the brain, and her bladder was in such condition that an indwelling catheter was inserted and retained for many days. Plaintiff had a bladder and kidney infection which required daily irrigation, sometimes twice daily. This condition continued until September 27. X-rays revealed a Colles fracture of the right wrist, two fractures of the rami of the left pubic bone, and a fracture of the left acetab-

ulum. X-rays subsequently taken disclosed a fracture of the left wrist and a narrowing or wedging of the eleventh dorsal vertebra. She remained at the Osteopathic Hospital until October 19. During a large part of the time she was there she had a high fever. Dr. Grant, the roentgenologist for the hospital, testified that the wedging or narrowing of the vertebra was indicative to him of a fracture of the vertebral body. Dr. Turner, who examined plaintiff and also read the X-ray films taken at the hospital, testified that the X-rays showed a condition which he diagnosed as compression of the body of one of the vertebrae of the lower dorsal spine; that later X-rays showed that there had been a compression fracture of the eleventh dorsal vertebral body. Plaintiff, at the time of the trial, had a "walrus hand" or "silver fork" deformity of both wrists, and she has limitation of motion in her left hand and a limitation of flexion of the left knee and of the hips. Her attending physician testified that he did not expect much further improvement in her condition; that the styloid process of the ulna of her right wrist is still ununited, and that she has a scar over her eye and on her left hand. Dr. Turner testified that he found numerous scars upon plaintiff. Her bill at the Osteopathic Hospital was $702.16; at the Danish-American Hospital it was $86; there was an ambulance charge of $18; Dr. Eastman's charge was $50, and Dr. Craske's bill was $500. These bills aggregate $1,356.16. Defendants offered no testimony in rebuttal of plaintiff's evidence as to her injuries and neither defendant cross-examined her upon that subject. In passing upon the amount of the damages awarded we must take into consideration the decline in the purchasing power of money. See *Howard v. Baltimore & O. C. Terminal R. Co., supra,* p. 103 (App. Den. 391 Ill. 629), where this subject is discussed at some length. We are satisfied that we would not be justified in holding that the damages awarded are excessive.

After a careful consideration of this appeal we have reached the conclusion that defendants were given a fair trial and that the judgment of the Superior court of Cook county entered January 10, 1946, should be affirmed, and it is accordingly so ordered.

*Judgment entered January 10, 1946, affirmed.*

FRIEND, P. J., and SULLIVAN, J., concur.