Edwin W. Kirchner, Trading as Kirchner Printing House, American Hotel Register Co. et al., Appellants, v. Allen B. Kuhlman, Trading as Chicago Decorating Company, Appellee.

Gen. No. 44,207.

Opinion filed May 26, 1948.   Rehearing denied June 9, 1948.
Released for publication June 10, 1948.

JULIUS S. NEALE, of Chicago, for appellants; WALTER
E. Moss, of Chicago, of counsel.

HETH, LISTER & FLYNN, of Chicago, for appellee;
JOHN A. MENK, of Chicago, of counsel.

MR. PRESIDING JUSTICE LEWE delivered the opinion
of the court.

This is an action to recover damages resulting from a fire alleged to have been caused by the negligence of defendant. There was a jury trial and verdict and judgment in favor of defendant. Plaintiffs' motions for judgment notwithstanding the verdict and for a new trial were overruled. Plaintiffs appeal.

Plaintiffs, James F. Leahy, Sarah F. Leahy and Vera L. Schendorf, owners of a six-story fireproof building commonly known as 226–232 Ontario street in the City of Chicago, leased the entire fourth floor of their building to plaintiff, Edwin W. Kirchner, who there operates a printing business. On June 21, 1944, plaintiff, James F. Leahy, entered into a written contract with defendant, a painting contractor, to paint and decorate the premises occupied by Kirchner. About eleven o'clock in the morning on July 12, 1944, while defendant's employees were painting Kirchner's premises, a fire occurred causing the damage complained of.

Plaintiffs rely upon the doctrine of *res ipsa loquitur*. Defendant maintains that the doctrine of *res ipsa loquitur* is not applicable because the evidence fails to show that defendant had exclusive control of the premises where the fire occurred.

According to the plat appearing in the record the building here involved is located on the northeast corner of Ontario and Franklin streets with a frontage of ninety-seven feet on Ontario street and extending north along Franklin street one hundred feet to a public alley. The fourth floor occupied by Kirchner is open and the view across the floor is unobstructed except for enclosed freight and passenger elevator shafts and sixteen equally spaced supporting pillars. The freight elevator shaft is located about midway between the east and west walls and twenty feet south of the north wall of the building. There are two thirty-inch doors sixteen feet apart in the north wall

opposite the freight elevator shaft and leading to a fire escape attached to the outside of the north wall.

On July 1, 1944, Kirchner, who usually employed eighteen or twenty persons, had shut down his printing establishment for a period of two weeks. On the morning of the fire three of Kirchner's employees were on the premises: Jeanne Syljebeck a bookkeeper, Frank Kratovil and Laddie Balik.

Kratovil, called by plaintiffs, testified in substance that on the morning of July 12, defendant's equipment, consisting of ladders, tarpaulins and paints was on the north or alley side of the floor; that near the freight elevator shaft a fifty-gallon drum of benzine with a spigot was lying "on a little horse"; that standing directly beneath the spigot of the drum of benzine was an empty five-gallon paint can; that the only thing in operation that morning was an air compressor driven by a small gasoline motor, used in spraying paint, and that the power driven air compressor was just in front of the fire escape door.

The witness further testified that about eleven o'clock someone hollered "fire!"; that at the time he was wiping paint spray from printing presses at the southwest corner of the premises; that he grabbed a fire extinguisher from a nearby pillar and rushed to the fire; that he saw a flame coming out of the paint can beneath the drum of benzine; that the spigot was open and as the paint can overflowed the flames spread and ignited paper and other combustible material nearby.

Balik, called by plaintiff, testified that Kratovil had charge of the plant and gave the "orders"; that at the time someone called "fire!" he was at the northwest corner of the floor; that he saw the fire coming out of the "big container" and the "flames leading down into the can" underneath it; that there were two empty crates over near the fire escape, "one had paper in it" and "maybe the other one had a few sheets in it; the paper in the crates was not scrap from the paper cut-

ting machine, it was mostly from lunches and so forth"; that the fire was two or three feet away from the crates, and that the fire in the paint can later ignited crates of waste paper.

The witness further testified that none of the printing presses was running; that "the gas lights on the presses were turned off, and the switches pulled"; that there was no debris and paper on the floor; that there was a hundred pounds or so in the crate, "newspapers and stuff like that"; and that on the morning of the fire the witness at Kratovil's direction "moved everything from the wall to clear the way" for defendant's employees.

Jeanne Syljebeck testified that she was working on her records when one of the painters "came rushing ing and asked me to call the fire department."

When the fire occurred defendant's employees Schlivka, Gale, Kerley, and Pfeiffer were engaged in painting and decorating the premises occupied by Kirchner. The defendant was not present.

Schlivka, called by defendant, testified that he was the first person at the scene of the fire; that when he first saw it he was about thirty-five feet away toward the southeast corner; that there was paper burning between the north wall of the building and the freight elevator shaft; that the pile of paper was about four or five feet high and four or five feet wide; that there were also a couple of crates with paper in them; that at the time of the fire the drum of benzine was standing up with the spigot directed toward the ceiling; that he tipped over the drum and tried to roll it out on the fire escape; that there was no fire inside the empty paint can at any time; that the gasoline motor driven compressor at the time of the fire was on the fire escape; that somebody gave him a fire extinguisher which he pumped until he was overcome by smoke.

Charles Gale, called by defendant, testified that he was painting window sash along the west wall near the north wall; that the printing presses along the west

side of the building were covered except the one behind him which was running; that "it was run by the company's man, and that the pilot lights were lit," and "I saw the flames inside the machine"; that his attention was attracted to the fire by the reflection of it in the glass, and that when he first saw the fire, paper was burning on the floor between the elevator shaft and the fire escape; that he came down from the ladder, pushed the button on the printing machine to stop it, and then ran to the fire; that he assisted Schlivka in rolling the drum of benzine away from the fire; and that they moved it just a few feet and left it flat against the wall there."

Defendant's employee Kerley had left his employment some time before the trial in the instant case and moved to southern Illinois with relatives. His whereabouts were unknown and he did not appear at the trial as a witness.

The other employee, Joseph Pfeiffer, testified by deposition on behalf of the defendant. Pfeiffer died several months before the trial. Plaintiffs read his deposition to the jury. Pfeiffer testified that between eleven and twelve o'clock on the day of the fire he was covering up a lot of paper stock with drop cloths to protect the paper and "doing some scaffolding"; that two of Kirchner's employees were working around the presses and wiping up; that at the north end of the building he saw the plaintiffs' employees sweeping up paper and putting it "in waste boxes that were back at the north wall"; that "there was plenty of paper on the floor; it was all over the floor," and "two Kirchner men who were working were pushing it back with brooms. The paint, oils and material were six or seven feet west of the compressor."

The witness further testified that when he first saw the fire it was in the waste paper on the floor and he was then about thirty feet away; that he ran to the office and told the lady, Jeanne Syljebeck, to call the

fire department; that he came back to the fire but it was progressing so rapidly that he had to leave the premises.

Plaintiffs assert that the fire started at a place on the fourth floor which defendant's employees were using as a "shop" and that it was in their sole and exclusive charge.

■ According to Pfeiffer's testimony, while the painters were busy in their work about the premises, Kirchner's employees, Kratovil and Balik, were sweeping up waste paper and putting it in crates in the vicinity which plaintiffs characterize as defendant's "shop." If Kratovil and Balik were working in that part of the premises where the fire occurred it follows that defendant did not have exclusive control of this area.

■ By introducing the evidence of defendant's employee Pfeiffer, plaintiffs made him their own witness and they were bound by his testimony. (*McCormick Harvesting Mach. Co. v. Laster,* 81 Ill. App. 316.)

■ None of the witnesses seem to know how the fire started nor can it be said that the evidence eliminates the possibility of negligence on the part of plaintiffs' employees. The responsibility of plaintiffs' employees to guard against fire was no less than that of defendant's employees, and where there is a divided responsibility the rule of *res ipsa loquitur* cannot be invoked. (*Blade v. Site of Ft. Dearborn Bldg. Corp.,* 245 Ill. App. 484.) The inference of negligence raised by the application of the rule is not absolute or conclusive but is rebuttable, and vanishes entirely when any evidence appears to the contrary. (*Bollenbach v. Bloomenthal,* 341 Ill. 539; Prosser on Torts, p. 291.)

■ We think the jury could find that defendant's employees did not have exclusive control of that part of the premises where the fire occurred.

■ ■ The record shows that sixteen instructions were given at the request of plaintiffs and five at the

request of defendant. Criticism is leveled at all of defendant's instructions. The instructions complained of are consonant with defendant's theory of the facts and the issues made by the pleadings. The law is well settled that each party to a cause of action is entitled to direct and specific instructions embracing his theory of the facts where his evidence tends to prove such facts. (*Thomas v. Chicago Embossing Co.*, 307 Ill. 134; *Koll v. Mitchell*, 330 Ill. App. 132; *Sullivan v. Union Transfer Co. of Omaha*, 330 Ill. App. 133.) Defendant's instructions stated in substance that in order to recover plaintiffs were required to prove that defendant, through his servants, was guilty of some negligent act causing the fire in question, while plaintiffs' instructions embodied their theory that no proof of any specific act of negligence was required. It was the province of the jury to decide whether one theory or another was sustained by the evidence. (*Pennsylvania Co. v. Backes*, 133 Ill. 255; *Chamberlain v. Chamberlain*, 116 Ill. 480.) We have carefully examined all the instructions complained of and do not find any imperfections prejudicing the rights of the plaintiffs.

For the reasons assigned, the judgment is affirmed.

*Judgment affirmed.*

KILEY and BURKE, JJ., concur.