Sadie Rees, Appellant, v. Thomas Spillane, Appellee.

Gen. No. 10,426.

Heard in this court at the May term, 1950. Opinion filed October 20, 1950. Released for publication November 8, 1950.

RUSSELL J. GOLDMAN and CARL A. SWENSON, both of Rockford, for appellant; JOHN B. ANDERSON, of Rockford, of counsel.

MAYNARD & MAYNARD, of Rockford, for appellee.

MR. JUSTICE BRISTOW delivered the opinion of the court.

This case comes to us from the circuit court of Winnebago county wherein a judgment was entered upon a verdict for the defendant in bar of action and for costs. The plaintiff, Sadie Rees, in this proceeding sought damages from the defendant, Thomas Spillane, which she sustained as a result of being struck by an International wrecker owned by the defendant, and operated by his agent, Bruce Veitch. The wrecker of the defendant, at the time of the occurrence in question was propelling an automobile which was being driven by George Patton, who was also made a party defendant.

At the conclusion of all the evidence, on motion of the plaintiff, defendants Bruce Veitch and George Patton, were dismissed out of the case, and this appeal therefore lies only as to defendant Thomas Spillane.

This cause was tried once before, resulting in a general verdict finding the defendant, Thomas Spillane, guilty, and assessing the plaintiff's damages in the sum of $5,000. The jury in that proceeding, in answering special interrogatories submitted to them, found that defendant Veitch was acting as an agent of defendant Spillane, and that the accident occurred while he was operating within the scope of his employment. They also found that the plaintiff, before and at the time of the accident, was in the exercise of due care for her own safety, and that defendant Spillane was guilty of wanton and wilful misconduct. The court set aside the results of that trial, thus necessitating the present proceeding now under consideration.

There were two counts in the plaintiff's complaint, the first charging ordinary negligence, and the second, wanton and wilful misconduct. From a factual standpoint, it is alleged in both counts that on October 6,

649

1947, the plaintiff was crossing Jefferson street in the City of Rockford, walking in a northerly direction at the east side of its intersection with Winnebago; that both of said streets are public highways, Jefferson street running in an east and west direction, and Winnebago in a north and south direction; that said intersection is a closely built business and residence portion of the city; that on the date in question, the defendant Spillane, by his agent Bruce Veitch, was driving an International wrecker in an easterly direction along Jefferson street, approaching and crossing the intersection with Winnebago street; and that the defendant struck the plaintiff while she was in the exercise of due care, and in doing so, was guilty of several acts of negligence, including speed, defective brakes, failure to keep proper lookout and to give notice. As the result thereof, she suffered a fracture of the left femur, and expenses in the sum of $771.

At the conclusion of the plaintiff's case, the trial court directed a verdict finding the defendant "not guilty" on the negligence count. It was his view that the plaintiff was guilty of contributory negligence as a matter of law, and allowed the case to go to the jury on the wilful and wanton count. At the request of the plaintiff, there was submitted to the jury two special interrogatories. The first resulted in a finding by the jury that the plaintiff was guilty of wilful and wanton misconduct that contributed proximately to cause the injuries complained of; and the second, that the defendant, Spillane, was not guilty of wanton and wilful misconduct.

In as much as the propriety of the court's action in granting defendant's motion for a directed verdict is questioned, it becomes appropriate, for the purposes of the opinion, for us to set forth the factual situation rather fully. Ruby Moeller testified that she talked to

650

the plaintiff, Sadie Rees, just a few minutes before the accident, which was between 7:45 and 8 o'clock p. m. on October 6, 1947. She said that the plaintiff proceeded north across Jefferson street in a straight line, parallel with the east side walk of North Winnebago street, and that when Mrs. Rees had just crossed the middle line of Jefferson street, she heard the screeching of brakes and saw Mrs. Rees lying on the pavement; that there was a STOP sign, not an electric sign, located at the southeast corner of Winnebago and Jefferson streets. Ray Anderson, the second witness, was a member of the Rockford police force who appeared at the accident soon after its occurrence. He testified that West Jefferson street was forty-eight feet in width; that it was planned for a two way traffic, and there was a painted mark in the center of the street; that upon his arrival at the scene, he found a 1936 International wrecker and a second vehicle, an automobile which was not actually involved in the collision; that both cars were facing east and sitting just past the east side of the intersection of the two streets. He further testified that the driver of the wrecker pointed to a spot twenty-one feet north of the south curb of Jefferson street and eleven feet east of the east curb of Winnebago street as the point where he struck the plaintiff.

George Patton, the driver of the vehicle being propelled, said he saw the plaintiff start north across the street, but that he was unable to stop his car so swerved to the north to avoid striking her. He further said that the driver of the wrecker told him that he did not see Mrs. Rees until just before the impact because his view was obstructed by the car he was pushing.

Charles Berve, who also was a police officer, testified that he had investigated the accident; that in doing so, he talked with Bruce Veitch, who stated that he did not see the plaintiff come out from the

curbing and that he did not see her until he struck her with the left front bumper of the wrecker.

The plaintiff, a lady sixty-five years of age, testified that just prior to the accident she had talked with witness Moeller; that as she was proceeding on her way, she stopped at the south curb, looked east and west, and while walking across Jefferson street, she reached a point three feet north of the painted stripe; that she had seen no car until they were right upon her; that she saw the car that swerved to the north and just missed her, and that she heard no signals of any kind, and there were no headlights on the first car. She further testified concerning her injuries, hospitalization, and expenses, which has no bearing upon the issues presented on this appeal.

George Patton, who was one of the original defendants, was called under section 60 [Ill. Rev. Stat. 1949, ch. 110, par. 184; Jones Ill. Stats. Ann. 104.060]. He testified that on the night in question, he was operating a Beacon Continental which was being pushed by the defendant by his agent, Bruce Veitch; that both vehicles were traveling near the center line of Jefferson street, and that he swerved north to miss the plaintiff, who at the time was at the center line. He further testified that he did not sound a horn on his car as he approached the intersection, and when he first saw the plaintiff walking across the street, for the reason his car was not equipped with a horn that would work. He also testified that the wrecker did not sound a horn, and that he, Patton, did not apply the brakes as his car had no brakes.

Bruce Veitch, likewise, was called under section 60. He testified that, on the night in question, he had forgotten his tow chain, and consequently was called upon to push the Beacon Continental being driven by George Patton; that he gave no signals, and did not diminish his speed as he approached the intersec-

tion of Winnebago and Jefferson streets; that he did not see the plaintiff until he was within eight feet of her, and at the time of the impact she was two to four feet south of the center line, and that in endeavoring to pass to the south of her, the left side of the bumper of his wrecker struck her. He further said that the condition of his brakes was such that when the wrecker was being operated at a speed in excess of ten miles per hour it would slide quite a bit before stopping. Veitch also testified that he was probably half a foot or a foot to the north of the center line of Jefferson street, prior to the time that he swerved south in an effort to avoid striking the plaintiff. (Veitch's testimony.) On cross examination of Veitch, the following occurred: Question: "So that whether you went over a little north of it or not you couldn't actually state of your own knowledge?" Answer: "No, I couldn't." Question: "So it is possible you might have been a little bit over?" Answer: "Maybe a half foot or a foot."

James P. Freeman was the only witness called on behalf of the defendant. He was sitting in an automobile on Winnebago street just south of Jefferson street. He testified that at the time he first observed the plaintiff, she was only about six feet north of the south curb, and that she then took a couple of steps and was struck; that this occurred when she was about ten feet out in the traffic; and that she was struck by the right front bumper of the wrecker. He further testified that there were lights on the truck which was traveling at 25 miles an hour; that when the wrecker struck the plaintiff, she went about four feet in the air; and that she was using a cane, and was shuffling along and from this he thought "she looked like she was half tight."

The first inquiry on this appeal that compels consideration is the action of the trial judge in sustaining

defendant's motion for a directed verdict on the negligence count at the close of the plaintiff's case. The trial court was convinced that the defendants were extremely careless in the operation of their wrecker truck on the night in question. In passing upon the motion for a directed verdict, the court used this language, "With respect to the wilful and wanton count, there isn't any question in my mind but that there is sufficient evidence to go to the jury on the question of wilful and wanton conduct—driving a car with reckless disregard for the safety of others. Here is an old car that was being pushed without brakes, without any way of stopping it, right down one of the main traveled streets in the city, pushed by a wrecker behind it right through a business portion of the city. I think it is such reckless disregard of the safety of others that it comes within the definition of wilful and wanton conduct."

However, the trial court was of the view that the plaintiff at and before the occurrence in question was guilty of contributory negligence as a matter of law. He entertained the thought that had she looked east and west when she undertook to cross the street, as she testified she did, she could not help but see the oncoming cars. Appellee in his brief, finds support for this position in the familiar holding in the case of *Greenwald v. Baltimore & O. R. Co.*, 332 Ill. 627, namely, "The law will not tolerate the absurdity of a party testifying that she looked and failed to see what was there to be seen."

██ In passing upon a motion for directed verdict, a trial court is not permitted to weigh the evidence, but he must consider it in its most favorable light, giving the plaintiff the benefit of its most reasonable intendments. Under our Illinois statute, chapter 95½, section 171 [Jones Ill. Stats. Ann. 85.203], the plaintiff as a pedestrian, using a marked crosswalk is af-

forded certain rights and safe guards. It reads as follows: "Where traffic control signals are not in place or in operation, the driver of a vehicle shall yield the right of way, slowing down or stopping if need be to so yield to a pedestrian crossing the road way within any marked crosswalk or within any unmarked crosswalk at an intersection."

In the case of *Gold v. Boland,* 338 Ill. App. 663, 88 N. E. 498, the court said: "The rule that a pedestrian's failure to keep a continuous lookout is not contributory negligence as a matter of law is particularly applicable where the action is governed by the 'right-of-way' statute, Smith-Hurd Ann. St., Ch. 95½, Sec. 171." Our courts have repeatedly held in cases similar to the one under consideration that the question of plaintiff's contributory negligence is a fact for determination by a jury. One of the most recent analogous and controlling authorities in the field is *Moran v. Gatz,* 390 Ill. 478, 62 N. E. (2d) 443.

These appear to be the most favorable and salient facts that lend support to the claim of the plaintiff that she was not guilty of contributory negligence: She was walking slowly across the street at an intersection, using a cane; she looked east and west and saw no cars coming from the west; she had approximately reached the center of the street, twenty-four feet from the curb, and along came a wrecker traveling twenty-five miles per hour, pushing an old jalopy that had no brakes, no lights, no horn, and no gas tank at night time; the driver of the wrecker could not see in front of him because of the car he was propelling; he did not see the plaintiff until he was within eight feet of her; his brakes were not good when he was traveling faster than ten miles per hour; the driver of the wrecker stated that he might have passed over slightly on the north side of the middle line of Jefferson street.

Mrs. Rees testified that she did not see the cars coming down the street from the west. Is this so incredible? Assuming that this crippled lady was walking at the rate of two miles per hour, and assuming further that the defendant's witness Freeman is to be believed, the wrecker was traveling twenty-five miles per hour or twelve times as fast as Mrs. Rees. From the curb to the point of the impact was twenty-four feet. Therefore when she left the curb, the defendant's vehicle was twelve times that distance away, namely, three hundred feet and without lights.

When the plaintiff undertook to cross Jefferson street at the marked crosswalk on the occasion in question, she had a right to assume that all automobiles being driven upon that street at that time would be operated with reasonable care and that they would be under such control that they would not collide with her. It would appear to this court that the plaintiff's misfortune was due entirely to the negligence of the defendant. She had reached the center of the street which ought to be a place of safety, but instead the defendant drove down the street, inexcusably driving across the center line, not realizing her presence until it was too late for him to stop. The court erred when he ruled that the plaintiff could not recover because she was guilty of contributory negligence. A fortiori, the jury erred when they so fantastically determined that she was guilty of wanton and wilful conduct that proximately contributed to her injuries.

It is apparent that the jury was forced into this error because of certain instructions given for the defendant and not one given for the plaintiff. There was read to the jury five instructions embracing the single proposition that the plaintiff cannot recover if she is guilty of wanton and wilful conduct that proximately caused her injuries. They are as follows:

1. "With reference of Count 1A of the complaint, being the wilful and wanton count against the defendant, Thomas Spillane, the court instructs the jury that one of the defenses relied upon by the defendant is that of contributory wilful and wanton conduct on the part of the plaintiff. The term 'contributory wilful and wanton conduct' is used in the law to designate such conduct on the part of the plaintiff as prevents her from recovering in an action for injuries to herself. Contributory wilful and wanton conduct means that the plaintiff must have intentionally exposed herself to a known danger, or she must have been injured as a result of an act on her part committed under circumstances exhibiting a reckless disregard for her own safety, such as a failure after knowledge of the impending danger, if any, to exercise ordinary care to prevent it, or a failure to discover the danger, if any, through recklessness or carelessness when it could have been discovered by the exercise of ordinary care on her part.

2. "The court instructs the jury that the plaintiff has charged that the defendant, Thomas Spillane, by and through his agent, was guilty of wilful and wanton conduct which proximately caused the injuries to the plaintiff and in this regard the court instructs the jury that for an act to be wilful and wanton, the injury must have been intentionally caused, or the act causing the injury must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure after knowledge of the impending danger, if any, to exercise ordinary care to prevent it, or a failure of the defendant, Thomas Spillane, by his agent, to have discovered the danger through recklessness or carelessness, when it could have been discovered by the exercise of ordinary care.

3. "The court further instructs the jury that the defendant, Thomas Spillane, has charged by his an-

657

swer that the plaintiff, Sadie Rees, was guilty of wilful and wanton conduct, and in this regard you are instructed that, if you find from the evidence in this case, that the plaintiff, Sadie Rees, walked upon, into or across West Jefferson street, at the time and place in question, with knowledge of an impending danger to herself, if any and if you further find that knowing such danger, if any, she failed to exercise ordinary care to prevent injury to herself, if any, or if you find, from the evidence, that the plaintiff, Sadie Rees, failed to discover the danger, if any, through recklessness or carelessness on her part, if any, when such danger, if any, could have been discovered by the exercise of ordinary care on her part, and if you further find from the evidence and under the instructions of the court that the plaintiff's failure, if any, as aforesaid, contributed proximately to cause the injuries complained of and that such failure amounted to wilful and wanton conduct on her part, as defined in these instructions then you are instructed that the plaintiff cannot recover in this case against the defendant, Thomas Spillane.

4. "The court instructs the jury as to Count 1A of the complaint pertaining to the defendant, Thomas Spillane, that the burden of proof is upon the plaintiff, Sadie Rees, to prove, by a greater weight or preponderance of the evidence in the case, the following propositions:

"1. That she, the plaintiff, Sadie Rees, was free from any wilful and wanton conduct on her part which contributed proximately to cause the injuries complained of.

"2. That the wilful and wanton conduct, if any, of Bruce Veitch, as agent and servant, was the direct and proximate cause of the occurrence in question.

"3. That Bruce Veitch was, at the time and place of the occurrence in question, the agent and servant of the defendant, Thomas Spillane.

"4. That Bruce Veitch was, at the time and place of the occurrence in question, acting in the course of his employment as such agent and servant of the defendant, Thomas Spillane.

"And if you find, from the evidence, that the plaintiff, Sadie Rees, has failed to so prove these propositions, as stated, or that she has failed so to prove any one of them, she cannot recover against the defendant, Thomas Spillane and you should find the defendant, Thomas Spillane, not guilty.

5. "The court instructs the jury that in this case the plaintiff has charged, among other things, that the defendants were guilty of wilful and wanton conduct in the operation of the motor vehicle, at and just prior to the time of the occurrence in question. You are further instructed that the plaintiff has charged that the defendant, Thomas Spillane, was guilty of wilful and wanton conduct by and through his agent, Bruce Veitch, at and just prior to the time of the occurrence in question. You are further instructed that the defendant, Thomas Spillane, by his answer, has charged that the plaintiff, did not exercise due and reasonable care for her own safety and that she was guilty of wilful and wanton conduct which contributed proximately to cause the injuries complained of and in this regard, the court further instructs you that, if you find from the evidence in this case, that the plaintiff, Sadie Rees, was guilty of wilful and wanton, if any, conduct, as defined in these instructions and that such wilful and wanton conduct proximately contributed to cause the injuries complained of, then you are instructed that she cannot recover against the defendant, Thomas Spillane, and you should find the defendant, Thomas Spillane, not guilty.

"The court instructs the jury as to Count 1A of the complaint, being the wilful and wanton count against the defendant, Thomas Spillane, that if you believe from the evidence, under the instructions of

659

the court, that the plaintiff, Sadie Rees, could have looked and ascertained whether the street was clear and whether or not an automobile or other vehicle was approaching, before she began or attempted to cross West Jefferson street from the south side to the north side, if such was the fact, and if the jury believe, from the evidence and under the instructions of the court, that the plaintiff failed to look and ascertain whether or not the street was clear and whether or not an automobile or other vehicle was approaching, prior to her crossing the street, if such was the fact, and if you further find, from the evidence and under the instructions of the court, if such failure on her part, if she did so fail, amounted to wilful and wanton conduct on her part, as defined in these instructions and if you further find from the evidence, that such wilful and wanton conduct contributed proximately to cause the injuries complained of by the plaintiff in this case, then the plaintiff cannot recover and your verdict should be for the defendant, Thomas Spillane.''

So many instructions upon the same subject, surely, were not necessary. The admonition contained therein, coming so often from the lips of the learned trial judge, could not but over-impress the jury with their compelling importance.

The plaintiff, having certain rights, in crossing a street at an intersection, tendered the following instruction:

''The Court instructs the jury that on the date of the accident in question, there was and now is in full force and effect a certain statute of the State of Illinois in words and figures as follows: 'WHERE *traffic control signals are not in place or in operation, the driver of a vehicle* shall yield the right of way, slowing down or stopping if need be to so yield, to a pedestrian crossing the roadway within any marked crosswalk or within any unmarked crosswalk at an intersection.' '' The

Court refused this instruction and wrote upon it the following: "Evidence is that there were control signals, stop sign on each side of Jefferson which make it a through street." Counsel for appellee concede that the trial court's reason for refusing this instruction was not good, but contends that there were other reasons why it should be refused, and cites the case of *First Mission Covenant Church of Rockford, Ill. v. Rockford Broadcaster, Inc.*, 324 Ill. App. 8, holding as follows. It is established law that a correct decision on erroneous grounds is not a basis for reversal, and is harmless error. It is the correctness of the court's ruling and not the reasons therefor that is before the reviewing court.

There were not traffic control signals at the intersection of Winnebago and Jefferson streets at the time of the accident. There was simply a stop sign at the northwest and southeast corners placed there for the purpose of regulating vehicular traffic, and were not in the category of traffic control signals as contemplated by the legislature in their "right of way" statutory provision herein before mentioned. It was of vital importance to plaintiff's cause that this instruction be given, and the court erred in refusing the same.

This instruction was given on behalf of the defendant:

"The court instructs the jury that if you believe from the evidence in this case that Bruce Veitch was exercising ordinary care in the management and operation of his motor vehicle and the plaintiff, Sadie Rees, at the time and place of the occurrence in question, suddenly and unexpectedly and without the knowledge of the defendant proceeded into the path of the defendant's motor vehicle and thereby placed herself in a position of danger, then in order to charge the defendant, through his agent and servant, with the

duty to avoid injuring the plaintiff, the plaintiff must show, by a preponderance of the evidence in the case, that the circumstances were of such character that the agent and servant of the defendant, had an opportunity to become conscious of the facts giving rise to such duty and a reasonable opportunity, in the exercise of care and caution, to perform such duty.'' This instruction completely ignores the duty of a motorist to keep a lookout for a pedestrian who may rightfully be upon a crosswalk at an intersection. Furthermore there is no evidence that the plaintiff suddenly darted into the street into the path of an oncoming vehicle.

In view of the foregoing observations we are of the opinion that the plaintiff is entitled to another trial upon both counts of her complaint, and that the judgment entered herein should be reversed.

*Reversed and remanded.*