RICHARD GILBERTO, a minor, by PHYLLIS GILBERTO, his mother and next friend, Plaintiff-Appellee, *v.* LILLIAN NORDTVEDT, Administrator of the Estate of ROBERT RAMEL, Deceased, Defendant-Appellant.

(No. 70-285;

Second District—October 5, 1971.

678

Strass Terlizzi & Skjoldager, of Dundee, (R. M. Strass, of counsel,) for appellant.

Fred Lambruschi, of Chicago, for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:
Defendant, Lillian Nordtvedt, Administrator of the Estate of Robert

Ramel, Deceased, appeals from a judgment for $50,000 in favor of the plaintiff Richard Gilberto. The judgment was entered upon a jury verdict in a cause involving personal injuries resulting from an automobile accident on June 18th, 1968. Defendant urges trial errors as depriving him of a fair trial.

The complaint filed by the plaintiff had originally included a Dram Shop Count charging intoxication, but this was dismissed upon plaintiff's motion prior to the beginning of the trial with an admission that he was unable to prove intoxication. Defendant first argues that the court erred in refusing to enter a protective order which would have forbidden the statement by a witness James Green in an evidence deposition, that Ramel drank "one can" of beer at a party prior to the accident.

The evidence deposition of Green was taken in Wisconsin on April 24th, 1970, by plaintiff's attorneys with defendant's counsel participating. Green had lived in the same apartment with Ramel in Illinois during March, April and May of 1969. The testimony was that in April of 1969, Ramel narrated details of the accident which had taken place the previous June. In substance, Green testified that Ramel told him that he had trouble sleeping as he kept hearing one of the passenger's voice telling him to stop or slow down; that he approached the curve where the accident occurred at 90 to 100 miles per hour; and that Ramel explained that he had an argument over the telephone with his girl friend, Carole Baum, earlier that evening while he was at a party. Green also testified that he was at the party attended by Ramel, his passengers and a number of others just prior to the accident, and that a small amount of beer was consumed. The witness was asked whether he saw Ramel drink any beer, and he answered "he had one can".

■■ Defendant argues that it was prejudicial error to permit evidence of defendant's drinking to go to the jury when intoxication was not an issue, citing such cases as *Miller v. Chicago Transit Authority* (1954), 3 Ill.App.2d 223; *Clarke v. Rochford* (1967), 79 Ill.App.2d 336; *Shore v. Truman* (1965), 63 Ill.App.2d 315; *Kitten v. Stodden* (1966), 76 Ill.App.2d 177 and *Warp v. Witmore* (1970), 123 Ill.App.2d 157. These cases are authority for the rule that evidence of drinking cannot be equated with intoxication and that it is error to introduce the issue of drinking when intoxication is not an issue. We think the trial court should have stricken that portion of the evidence deposition. However, the introduction of this irrelevant evidence of drinking is cause for reversal only if it results in prejudicing the jury's verdict. Thus, in *Miller v. Chicago Transit Authority* an objection to a question regarding drinking was sustained by the trial judge and thereafter counsel pursued the

subject with another question to which an objection was again sustained. The questions were part of an apparent effort on the part of defendant's counsel to discredit the testimony as to plaintiff's dizziness and his falling in the hospital by the innuendo that plaintiff had been drinking with no proof to support the statement. In addition, defendant's counsel was attempting to show purely by innuendo that the plaintiff's manner of speech was different when he took his deposition although there was no proof in that regard. Under those facts the holding properly was that the verdict was the result of prejudice. Similarly in *Clarke v. Rochford* an attempt was made to raise the question of intoxication by insinuation and to also bring up the issue concerning revocation of the defendant's driver's license for drunken driving at a previous time, with obvious prejudice. In *Kitten v. Stodden* there was obvious prejudice in the statement by the trial judge during voir dire examination that "two drunks are still entitled to the same law as persons who are not intoxicated" when there was no evidence of intoxication. Likewise, the other cases cited are inapposite on their facts.

■■■ Here, there was no attempt to show that Ramel was intoxicated at the time of the accident by innuendo or inference. With the exception of the reference in Green's deposition testimony, there was no other reference to drinking in any argument to the jury or in any comment or instruction. Harmful error does not necessarily result when immaterial facts are adduced at a trial; it may result if such evidence is of such nature or so pursued that it influences a verdict by an appeal to passion or prejudice. (See *Boeker v. Grigg*, Abst-1956), 11 Ill.App.2d 368. See also *Shephard v. Smith* (Wash.-1939), 88 P.2d 601, 603 and *LeFevre v. Bear* (Fla.-1959), 113 So.2d 390, 392.) The evidence of Ramel's having drunk one can of beer at a party, under all the circumstances, was not considered by the court to have a prejudicial effect and we will not interfere with the exercise of the discretion of the court in not withdrawing that portion of the testimony in the deposition from the jury.

■■ Defendant also argues that the court erred in allowing two eye witnesses, Caufield, and Strossner, to testify for the plaintiff. The evidence showed that the accident happened when Ramel attempted to pass a car being driven by Caufield (in which Strossner was a passenger) at a curve. Ramel did not make the curve, his car hit a guardrail, bounced up in the air and came backwards in a big U-turn and hit Caufield's car. Defendant's argument is based upon the fact that Ramel had died (of causes unconnected with the accident after the complaint was filed but before the trial) and the cause was being defended by his administrator. Defendant urges that the possibility of these witnesses suing or being sued as a result of the accident made them "interested parties" barred

under the provisions of the Evidence Act (Ill. Rev. Stat. 1967, ch. 51, par. 2). No suits had been filed by either Caufield or Strossner and whether any such suits would be filed was speculative. Nor are we given any authority that the outcome of this case would be binding in other suits however unlikely to be filed in the future. Neither Caufield nor Strossner were parties to this suit and under the circumstances in the record no valid reason for joining them is indicated. The fact that Gilberto might sue Caufield or that Caufield and Strossner could have sued Ramel did not provide the direct, certain and immediate interest required to bar their testimony under the statute, considering the circumstances of this record. (*Bellman v. Epstein* (1917), 279 Ill. 34, 37; *Gieseke v. Hardware Dealers Mut. Fire Ins. Co.* (1965), 61 Ill.App.2d 119, 125; *Braun v. Lawder* (1951), 344 Ill.App. 423, 426; *Martin v. Stransenback* (Abst-1948), 334 Ill.App. 624.) The cases cited by defendant *Clifford v. Schaefer* (1969), 105 Ill.App.2d 233, and *Mernick v. Chiodini* (1957), 12 Ill.App.2d 249, involve witnesses who were actual parties, directly interested and adverse to the administrator, and have no application here. We conclude that the court did not err in allowing Caufield and Strossner to testify.

Defendant then argues that the court erred in granting plaintiff's motion for a protective order denying proffered testimony of witnesses that Green had stated, subsequent to his deposition, that he had been paid for his testimony by plaintiff's representative and had lied. In view of our holding as to the testimony of the witnesses Caufield and Strossner, the importance of the Green deposition would appear to be minimal on the whole record. Their testimony as to Ramel's speed of 90 to 100 miles per hour as he approached the curve would surely account for the jury finding that defendant was guilty of wilful and wanton misconduct. Moreover, this testimony of speed was confirmed at a point a mile or two before the accident by Robert Hosie, another witness for plaintiff. Also, the deposition of Green was allowed to be impeached by testimony of the witness Carole Baum that she and Ramel did not have a quarrel before the accident, and by the testimony of Gerald Shaver and James Summers that Green had a bad reputation for truth and veracity.

■ ■ In our view, it was not error for the court to prevent Shaver and Summers from testifying to the purported conversation with Green two days before the trial. The record shows that on the day of trial, prior to the choosing of the jury, defendant's counsel moved orally to suppress Green's deposition. He stated that his investigation had uncovered, only the night before trial, that Green had lied in his deposition for money and that Ramel had not confided in Green at all with reference to the details of the accident. The court noted that defendant could put Green

on and impeach his testimony. Defendant's counsel asked the court to issue a request to the Circuit Court of Jefferson County, Wisconsin, to subpoena Green. The court, stating that Green was not within the State of Illinois, refused the motion but further noted that it would be a day or two before plaintiff could put in all of his evidence and that defendant's counsel could bring Green in if he were available.[1] The deposition of Green was read to the jury by plaintiff's counsel on direct examination, defendant's counsel on cross-examination, with no further objection. At the close of plaintiff's case in chief, after a motion for a directed verdict was denied, plaintiff's counsel moved for the protective order against the witnesses' testifying to charges against his office amounting to the purported bribery of a witness. The stated basis was that Green, as a *non-party* witness, could only be impeached by first laying the usual foundation which would allow the witness to state under oath whether he had made the alleged impeaching statement.

■■■ In our opinion, the court properly granted the motion. A non-party witness may be impeached by a showing that he made inconsistent statements at another time as well as by proof of bias or motive to falsify. First, however, a foundation must be laid in order to alert the witness and to give him a chance to explain in either case. (*People v. Payton* (1966), 72 Ill.App.2d 240, 249. See also, *People v. Rainford* (1965), 58 Ill.App.2d 312, 317.) Defendant has argued that there was a proper foundation in this instance because, in the evidence deposition, Green had been asked generally whether he had been paid to testify and had answered in the negative. These questions and answers did not relate to the purported statements made by Green at a later time. The implication of the purported statement made by Green just prior to trial had much greater scope than whether or not he had received payment of any kind for appearing as a witness. The purported impeachment was directed at not merely whether the witness received some payment but at his alleged admission that he had not had the stated conversation with Ramel and that he lied in his deposition for pay. We agree that under

---

[1] Defendant has argued that he did "everything he could think of to meet this problem head-on". He refers to this motion for the suppression of the deposition and the alternative request to the Wisconsin court through the trial court to subpoena Green for trial. These requests were no answer to the problem. Defendant, in oral argument, suggests that he asked for a continuance in order to get the further evidence deposition of Green. The record does not support this contention and, additionally, counsel falls far short of claiming in his brief that he requested a continuance. In the colloquy before the court in which plaintiff's attorney objected to inferences that his office had engaged in wrongful conduct, defendant's counsel offered to submit the whole matter of "activities of attorneys or investigators" to the court for a hearing before continuing with the testimony, but no motion was made for a continuance of the trial.

these circumstances the witness must have an opportunity under oath to respond to such statements allegedly made by him before other witnesses can testify to them.

We, therefore, affirm the judgment below.

Judgment affirmed.

MORAN, P. J., and SEARS, J., concur.