Stavros Panos, a Minor, by His Father and Next Friend, Miltiadis Panos, Plaintiff-Appellant, *v.* Michael J. McMahon, Defendant-Appellee.

(No. 56220;

First District (3rd Division)—October 17, 1974.

*Rehearing denied November 26, 1974.*

Parrillo, Sims and Bresler, of Chicago (David J. Weiss, of counsel), · appellant.

Desort & Panek, of Chicago (John M. Burke, of counsel), for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaint'ff Stavros Panos, a minor, by his father and next friend, Miltiadis Panos, brought action against defendant, Michael J. McMahon, for injuries sustained by the minor when struck by defendant's automobile. The jury returned a verdict for defendant and judgment was entered thereon. Plaintiff appeals and contends that the trial court erred in the following:

    (1) refused plaintiff's instructions as to speed and lookout;

    (2) gave defendant's instruction and allowed closing argument on the absence of certain witnesses;

    (3) allowed defendant to testify that he was coming from a church council meeting;

    (4) refused to strike defense counsel's reference to the effect of any verdict; and

    (5) refused to include disability in the instruction on damages.

Plaintiff further contends that the verdict is against the manifest weight of the evidence.

Defendant contends in his answering brief that the appeal should be dismissed because plaintiff's abstract does not contain the notice of appeal.

The facts are as follows. On the evening of February 23, 1969, at about 9 P.M., plaintiff, his parents and two relatives were returning from a movie to the Panos home at 5647 West Washington Boulevard in Chicago. Mr. Panos parked his automobile across the street from his home, on the north side of Washington Boulevard, at a bus stop approximately 40 feet west of the intersection of Parkside Avenue. No cars were parked to the rear of the Panos car, but a few were parked in front of it. At the time, Washington Boulevard was an undivided four-lane east-west street with parked cars on both sides. As the passengers left the automobile, plaintiff's mother was holding his hand. He was 3 years old at the time, and was dressed in dark clothing. Plaintiff bit his mother's hand and ran south across the street, into the path of defendant's eastbound automobile, and was struck by the car's left front fender. He was treated for a fracture of the right femur.

Plaintiff's father testified that after discharging his passengers he noticed defendant's automobile traveling east when it was about one block away and estimated its speed to be between 30 and 35 miles per hour. He did not continue to look at the car. He heard a thud, saw the car stop, and saw his son lying in the street. On cross-examination he stated that prior to the accident his son was biting his mother's hand.

Plaintiff's mother testified that she and her son were standing in the street near the curb, directly behind the Panos car while waiting for her husband. Plaintiff suddenly bit her hand and ran from north to south

across Washington toward the Panos home. She stated that she observed defendant's approaching automobile for a period of 2 minutes and first saw it when it was a block and a half away. She estimated its traveling speed to be between 35 and 40 miles an hour. She saw her son as he was struck by the left front headlight of defendant's car.

Defendant testified that as he was traveling east on Washington Boulevard at about 25 miles an hour he noticed a parked car with the doors open and three or four adults alighting on the north side of the street. He was about 50 to 60 yards away. He further testified that when he saw the adults standing in the street he took his foot off the accelerator and put it on the brake pedal. He stated that he observed plaintiff prior to impact—at most, 2 feet away. He hit the brake and contact was made between the boy and the car at the left front fender. Both defendant and the police officer who examined his automobile at the hospital where plaintiff was treated testified that they had not seen any marks on the automobile other than "brush marks" where the road dust had been disturbed on the left front fender just above the left front wheel.

## I.

Defendant contends that the instant appeal should be dismissed because the abstract does not contain the notice of appeal, relying on the recent cases of *Shaw v. Kronst* (1973), 9 Ill.App.3d 807, 293 N.E.2d 153; and *Gregory v. Williams* (1973), 14 Ill.App.3d 905, 303 N.E.2d 621. Supreme Court Rule 342(e)(4) (Ill. Rev. Stat. 1971, ch. 110A, par. 342 (e)(4) provides that in the abstract of the record on appeal, "the judgment or order appealed from and the notice of appeal shall always be included." In *Shaw*, the court found that the appellant failed to abstract the judgment order from which the appeal was taken, and held that that deficiency alone was sufficient for dismissal of the appeal. However, the court went on to state, at page 809, "No notice of appeal is included in the abstract. By reference to the record we are able to ascertain that a notice of appeal was filed  *  *  *." The court there found a multitude of omissions, not only in the abstract filed but also in the record and the briefs in that case. At page 811 the court further stated: "It is the duty of the appellant to present an abstract or excerpts sufficient to set forth every error relied upon for reversal. (*Dempski v. Dempski*, 27 Ill.2d 69, 187 N.E.2d 734.)" At page 810 the court explained: "In order for the court of appeal to understand the questions which are presented it is essential that the court be able to determine these questions conveniently." In *Gregory*, the court dismissed the appeal, holding that it could not decide whether the appellant was entitled to a judgment *n.o.v.* in the absence of a report of proceedings, and further, because the defen-

dant failed to include the notice of appeal in the abstract, citing *Shaw v. Kronst, supra.*

■■ In the case before us, plaintiff's abstract of record on appeal contains the following at page 31: "C95 Notice of Appeal filed May 28, 1971; C98 Notice of Appeal and Proof of Service filed May 28, 1971." Unlike *Shaw* and *Gregory,* the plaintiff here has abstracted, at the very least, that a notice of appeal had been filed and made reference to its exact location in the record on appeal. The abstract does not specifically set forth the contents of the notice of appeal; nevertheless, we hold that the rule in *Shaw* and *Gregory* should not control in the instant appeal. There is no general confusion here as to the specific order from which the appeal is taken. No allegation has been made as to improper preparation or presentation of the briefs, record, or the remainder of the abstract. We have reviewed the record and find that the notice of appeal is proper as to form. The time expended by this court in reviewing the record for the contents of the notice of appeal does not justify a summary dismissal of the appeal. Supreme Court Rule 342(g) provides:

> "The entire record on appeal, whether or not contained in the excerpts from record or abstract, is available to the reviewing court for examination or reference. Omission of any relevant portion of the record from the excerpts from record or abstract shall not prejudice a party unless the reviewing court finds that there has been no good-faith effort to comply with this rule." (Ill. Rev. Stat. 1971, ch. 110A, par. 342(g).)

Although we do not condone the failure to properly abstract the notice of appeal by setting forth the contents verbatim, in the instant case defendant has suffered no prejudice. If the fact were otherwise we would follow the decisions of *Shaw* and *Gregory.* In view of the following discussion of the issues here raised, a summary dismissal would thwart, rather than further justice.

## II.

Plaintiff first contends that the trial court erred in refusing to include in Plaintiff's Instruction No. 6 the portions stating:

> "(1) Carelessly and negligently failed to yield the right of way;
> (2) Carelessly and negligently operated his automobile at a speed which was greater than was reasonable and proper with regard to traffic conditions and the use of the highway and endangered the safety of persons upon the highway and failed to decrease his speed when a special hazard existed with respect to pedestrians;
> (3) Carelessly and negligently failed to keep a proper lookout."

The instruction is based on an Illinois Pattern Jury Instruction (IPI—20.01). In the instruction conference the above deletions were made upon the granting of the objections of defendant to and exclusion in the original instruction as tendered, and plaintiff argued for the inclusion of those portions. The court deleted the issues of speed and lookout, stating that defendant testified he took his foot off the accelerator, which necessarily decreased the speed of his automobile, and that since he testified he saw a crowd around the parked car, defendant could not have seen the plaintiff and did not expect anyone to come out from behind the automobile. The court allowed certain other charges of negligence to remain in the instruction but deleted the three enumerated charges and directed plaintiff to include in his Plaintiff's Instruction No. 6 the charge that defendant otherwise, carelessly and negligently, owned, operated and maintained said vehicle. On appeal, plaintiff does not challenge the deletion of the right of way issue.

The general rule applicable to the granting or refusal of instructions tendered is that "[a] party to a lawsuit has the right to have the jury instructed upon his theory of the case when there are pleadings and evidence which support his theory." (*Vincent v. Wesolowski* (1967), 87 Ill.App 2d 477, 484, 232 N.E.2d 120; see also *Sherman v. City of Springfield* (1969), 111 Ill.App.2d 391, 409, 250 N.E.2d 537; *Sims v. Chicago Transit Authority* (1955), 7 Ill.App.2d 21, 129 N.E.2d 23; and *Kirchner v. Kuhlman* (1948), 334 Ill.App. 339, 79 N.E.2d 628.) The authority in Illinois is legion for the proposition that a person driving a moving vehicle has a duty to keep a lookout for objects and persons ahead of him. (See *Vincent v. Wesolowski, supra; Rees v. Spillane* (1950), 341 Ill.App. 647, 94 N.E.2d 686; *Johnson v. Nevenhoven* (1951), 344 Ill.App. 125, 100 N.E.2d 60; *Secrist v. Raffleson* (1945), 326 Ill.App. 489, 494, 62 N.E.2d 36; *Lakomy v. Hanson* (1960), 26 Ill.App.2d 452, 168 N.E.2d 740; *Deel v. United States Steel Corp.* (1969), 105 Ill.App.2d 170, 182, 245 N.E.2d 109; *Williams v. Stearns* (1930), 256 Ill.App. 425; and *Isley v. McClandish* (1939), 299 Ill.App. 564, 20 N.E.2d 890.) In *Rees v. Spillane, supra,* the appellate court reversed the trial court's refusal to give an instruction as to the duty of a driver to maintain a proper lookout. In that case a child was hit while crossing an intersection. The reviewing court there noted, however, at page 662: "* * * there is no evidence that the plaintiff suddenly darted into the street into the path of an oncoming vehicle." In *Vincent v. Wesolowski, supra,* the trial court refused to charge the jury as to defendant's failure to keep a lookout. The defendant testified that he observed the vehicle five blocks away, applied his brakes and cut out left to avoid hitting plaintiff. In affirming the refusal, the appellate court stated, at page 485:

"This evidence indicates that the defendant was in a position to and was in fact watching for other automobiles. There is no direct evidence to the contrary, and in light of the testimony of the parties the accident itself is not circumstantial evidence of a failure to keep a proper lookout."

Also, in *Lakomy v. Hanson, supra,* at page 457, the court held:

"The general rule that one cannot look and not see cannot be applied where the Court could reasonably believe that the object to be seen was, under the circumstances, concealed until almost on the plaintiff, the plaintiff being otherwise in the exercise of due care."

In *Deel v. United States Steel Corp., supra,* the operator of an industrial forklift sustained severe injuries when the top of his vehicle struck an overhead electrical cable. The appellate court, in affirming the trial court's refusal to instruct the jury as to the issue of plaintiff's contributory negligence in failing to keep a lookout, stated at page 182:

"There is no question that a person driving a moving vehicle has a duty to keep a lookout for objects and persons ahead of him but the type of lookout to be kept depends on the circumstances in which the vehicle is being operated."

■■ In the instant case, defendant testified that he observed several adults alighting from and standing around the Panos automobile. He further testified that he took his foot off the accelerator and placed it over the brake. He denied seeing plaintiff until almost 2 feet from the point of impact. Plaintiff's mother testified that she and plaintiff were standing in the street directly behind the automobile and that plaintiff *ran* across the street. There is direct testimony that defendant observed the adults. We find no evidence in the record that he did not keep a lookout for pedestrians. What is more critical, there is no evidence that the child was in view at a time when defendant's car might have been controlled to avoid the accident. (See *Isley v. McClandish, supra,* at 568, and *Lakomy v. Hanson, supra,* at 457.) The trial court's refusal, as a matter of law, to give the above instruction as to lookout was proper.

The trial court also refused to instruct the jury on the issue of speed. We hold that the refusal constituted reversible error. In *Nei v. Contracting & Material Co.* (1968), 93 Ill.App.2d 226, at 233, 236 N.E.2d 264, the court held:

"A person can be driving under the speed limit and still be driving too fast for existing conditions. The plaintiff's speed was an element for the jury's consideration and the defendant was entitled to have an instruction on the subject."

In *Wrighthouse v. Brown* (1964), 52 Ill.App 2d 191, 196, 201 N.E.2d 752, the court held that the trial court's refusal to instruct the jury upon excessive speed and failure to decrease speed constituted reversible error. In that case defendant tendered the instruction on the general issue of plaintiff's contributory negligence. At the trial there, plaintiff testified that he took his foot off the accelerator and began to slow down to avoid hitting defendant's tractor.

■■ We reiterate, in the case before us, defendant testified that he took his foot off the accelerator. His testimony that his car necessarily slowed as a result is a mere conclusion not supported by the evidence. A vehicle *may decrease* in speed when pressure is released from the accelerator. On the other hand, a moving vehicle may maintain the same speed or decrease speed imperceptibly, depending on such factors as the grade of the roadway, the mechanical condition of the automobile, or other factors. There was no evidence, other than defendant's conclusion, that defendant's vehicle decreased in speed. Nevertheless, since there was conflicting testimony as to the speed of defendant's automobile, the jury should have been instructed on that issue. *Sims v. Chicago Transit Authority* (1955), 7 Ill.App.2d 21, 129 N.E.2d 23.

At the hearing on plaintiff's post-trial motion, the court stated that the speed and lookout issues were deleted since they were repetitious and would be necessarily considered by the jury in the charge that defendant otherwise, carelessly and negligently, owned, operated and maintained said vehicle. In *Schmidt v. Blackwell* (1973), 15 Ill.App.3d 190, 197, 304 N.E.2d 113, the reviewing court held defendant's given multiple-issue instruction "both verbose and repetitious." Such is not the case here.

Defendant also maintains that plaintiff has on appeal waived any objection he may have had on the above instruction. He argues that plaintiff should have specified the reasons for tendering the original instruction and should have objected in the trial court to the instruction as finally tendered to the jury. We disagree. It has often been held that since the action of the court in refusing an instruction is a ruling in the proceeding, an exception thereto is not necessary to make the ruling a ground for review. (*Department of Public Works and Buildings v. Barton* (1939), 371 Ill. 11, 20, 19 N.E.2d 935.) The facts and circumstances in *Meyer v. Polivat* (1957), 13 Ill.App.2d 491, 142 N.E.2d 747, relied upon by defendant, are not analogous to those in the instant appeal. In *Meyer*, defendant objected to one of plaintiff's instructions, and after the trial court stated its intention to refuse the instruction as tendered, plaintiff offered to tender a companion instruction. Both were given, and on

appeal plaintiff urged reversal, claiming that it was not necessary to demand tender of the companion instruction. At page 493 the court held that

"* * * where the court indicates he will refuse a tendered instruction unless there is a companion instruction submitted therewith, the tendering party may, at his option, suffer the refusal of the first, or prepare and tender the required companion instruction. If he chooses the latter course, he is responsible for the form he prepares and tenders."

In the case before us, at the conference on instructions the plaintiff objected to the court's refusal to instruct the jury upon the issues of lookout and speed. Other than the tender of the issues instruction as modified at the direction of the court, there is no affirmative indication that plaintiff acquiesced in the ruling of the trial court. We conclude that plaintiff did not waive his objection to the instruction.

## III.

Plaintiff further contends that the court erred in giving Defendant's Instruction No. 7 and allowing defense counsel to remark on the absence of certain occurrence witnesses. The instruction, given over objection by plaintiff, stated:

"If a party to this case has failed to produce a witness within his power to produce, you may infer that the testimony of the witness would be adverse to that party if you believe each of the following elements:

(1.) The witness was under the control of the party and could have been produced by the exercise of reasonable diligence.

(2.) That witness was not equally available to an adverse party.

(3.) A reasonably prudent person under the same or similar circumstances would have produced the witness if he believed the testimony would be favorable to him.

(4.) A reasonable excuse for the failure has been shown."

The instruction as given differed from the form in Illinois Pattern Jury Instructions (IPI—5.01) in that the last sentence of the pattern instruction reads: "4. *No* reasonable excuse * * *." (Emphasis added.) Plaintiff argues that: 1) it was error to instruct the jury as to the absence of witnesses; 2) the instruction as tendered and given was vague, conflicting and tended to confuse the jury; and 3) the trial court improperly allowed defense counsel to remark upon the absence of the occurrence witnesses.

Prior to trial, plaintiff filed answers to defendant's interrogatories, listing as witnesses Gus and Katherine Manageris, passengers in the Panos

automobile on the night in question. Upon motion of defendant, the court entered an order directing plaintiff to supply defendant with the addresses of the named witnesses who were relatives of plaintiff and, on failure to do so, barring the testimony of those witnesses at trial. The addresses were not furnished to defendant prior to trial.

Instructions and remarks of counsel on the other party's failure to produce testimony at trial have long been considered proper in Illinois. (See *Beery v. Breed* (1941), 311 Ill.App. 469, 36 N.E.2d 591.) Plaintiff's reliance upon the decision in *Cicale v. Aronson* (1969), 113 Ill.App.2d 324, 252 N.E.2d 114, is unfounded. There the court held that an instruction and comment upon plaintiff's failure to produce the person who took defendant's statement was improper since plaintiff was under no duty to produce that person. In a recent case similar to the one before us, and involving the same pattern instruction (*Ballard v. Jones*, 21 Ill. App.3d 496, 502, 316 N.E.2d 281), this court held that the trial court did not abuse its discretion in refusing the instruction, stating:

> "Under the rule of the tendered instruction, a party is not bound to introduce every witness who might know something about the matter at issue at the risk of being burdened with an unfavorable inference because of his failure to do so. (See *People v. Moore*, 52 Ill.App.2d 27, 201 N.E.2d 619; 20 Am. Jur., *Evidence*, sec. 187.) When there are multiple occurrence witnesses, (not all of whom testify), the granting of this instruction should be within the sound discretion of the trial court. See *Hildebrand v. Baltimore & Ohio R.R. Co.*, 41 Ill.App.2d 217, 190 N.E.2d 630.

> Three of the six passengers of the Ballard vehicle testified to the occurrence, in addition to an independent occurrence witness who was brought in, at plaintiff's expense, from California. Therefore, the testimony of both plaintiff and her husband was corroborated. Furthermore, although no competent explanation was given for the unavailability of the remaining three, they were out-of-state residents."

■■ Unlike the facts stated in *Ballard*, in the instant case, the testimony of plaintiff's father and mother was not corroborated, and there is no evidence that Gus and Katherine Manageris were out-of-state residents. Considering the facts, we cannot say that the court abused its discretion in granting the instruction. However, plaintiff contends that the order of court barring him from producing these witnesses at trial on his behalf made them unavailable to him. We find no merit in this argument. The witnesses were plaintiff's relatives; he knew their whereabouts, and the effect of the order could easily have been avoided by informing defendant of their addresses.

Plaintiff's argument that the instruction as tendered was vague and confusing must also fail. If, as defendant contends in his brief in this court, the deletion of the word "No" from the last sentence in the instruction was a typographical error, or if the deletion was intentional, no prejudice resulted to plaintiff. Instead, the jury could have inferred that the testimony of the witnesses would have been adverse to plaintiff if they found that a reasonable excuse for plaintiff's failure to produce them had been shown. Upon examination of the record we do not find any evidence to establish a reasonable excuse for the failure to produce these witnesses. Furthermore, plaintiff has not indicated in his briefs and argument before this court how the jury would be thereby confused.

## IV.

■■ Plaintiff next contends that the trial court erred in permitting defendant to testify, over the objection of plaintiff as to materiality, that on the night of the accident he was coming home from a church council meeting at St. Bernadine's in Forest Park. Plaintiff maintains that the statement constitutes prejudicial error and characterizes counsel's question as an attempt to show the jury that the defendant was a man of religion and good character. We note that plaintiff's father testified that the family was coming home from seeing a movie. Does this then lead to the interpretation that the father is a good family man whose reputation for truth and veracity is beyond reproach? We think not. We find no evidence in the record that the defense pursued this line of questioning or solicited the answer to implant in the mind of each juror that the defendant was a man of religion and good character. Although the question and answer were not material to any of the issues at trial, the error, if any, in overruling plaintiff's objection to the question was at most harmless error. Compare *Gilberto v. Nordtvedt* (1971), 1 Ill.App.3d 677, 274 N.E.2d 139.

## V.

Plaintiff contends that the court erred in allowing counsel for defendant to make the following remark to the jury in closing argument: "Any verdict that you render in this case today is going to affect these people probably for a serious number of years, not just the boy, but Mr. Mc-Mahon also." We are cognizant of the general rule that reference to the financial status of the parties may constitute reversible error. (See *Hickey v. Chicago Transit Authority* (1964), 52 Ill.App.2d 132, 201 N.E.2d 742.) Plaintiff posits that "The language used by defense counsel could easily be construed that it would take a number of years for Mr. McMahon to pay off any judgment entered against him in this case." We disagree. The language does not specifically refer to the financial

status of either the defendant or the plaintiff. A verdict for defendant could likewise affect the plaintiff financially. Counsel stated that "any verdict" rendered could affect "these people." From the language used we cannot infer that counsel was specifically referring to a verdict against defendant or that defendant would be unable to satisfy the same for a number of years.

## VI.

Plaintiff further contends that the trial court erred in refusing to include the element of disability in the instruction on damages tendered by plaintiff. A physician testified on behalf of plaintiff that during the last examination which occurred approximately 1 month prior to trial, he observed that plaintiff walked with a slight limp. In the record on appeal, plaintiff admits that the court reporter was not present during that part of the conference on instructions where damages were discussed, that the court indicated it would refuse to instruct the jury as to the element of disability and that the trial court directed plaintiff to retype the damage instruction, deleting any reference to disability resulting from the injury. During the argument of counsel on plaintiff's post-trial motion, the trial court stated that it had refused to instruct the jury on disability because it had seen the child running about the courtroom during the trial and no limp was noticeable at that time.

■■ Since this matter must be remanded for a new trial for the various reasons set forth, we find it necessary to comment on this element of damages. The question may again occur upon retrial. Notwithstanding that the record does not reflect that plaintiff objected to the trial court's refusal to so instruct the jury, we find that the refusal to do so would have consituted an abuse of discretion. There was testimony that plaintiff had a slight limp. In a jury trial, the several men and women selected to serve are the triers of fact. If no limp were noticeable at the time of trial, it was for them to determine, after hearing testimony and observing both the witnesses and the parties, that no disability resulted from the accident.

■■ Also, since the case necessitates a remand, we find it unnecessary to discuss plaintiff's final contention that the verdict is against the manifest weight of the evidence.

For the reasons stated, the judgment of the trial court is reversed and the matter is remanded for a new trial consistent with the views expressed herein.

Reversed and remanded.

McGLOON and DEMPSEY, JJ., concur.